Mark SMIT and Jana Smit, Plaintiffs–Appellees and Cross–Appellants,

v.

Darwin ANDERSON, d/b/a Eagle View Homes, Defendant–Appellant and Cross–Appellee.

No. 01CA0122.

Colorado Court of Appeals, Div. V.

June 20, 2002.

Certiorari Dismissed Aug. 29, 2002.

Kenneth Dresner, Colorado Springs, Colorado; Walter H. Sargent, P.C., Walter H. Sargent, Colorado Springs, Colorado, for Plaintiffs–Appellees and Cross–Appellants.

Jones & Waters, L.L.C., Michael R. Waters, Colorado Springs, Colorado, for Defendant–Appellant and Cross–Appellee.

Opinion by Judge ROY.

In this tort action, defendant, Darwin Anderson, d/b/a Eagle View Homes (contractor), a general contractor, appeals from a jury verdict in favor of plaintiffs, Mark Smit (Smit) and his wife Jana Smit, awarding damages. Plaintiffs cross-appeal from the trial court's pretrial order dismissing their negligence per se and vicarious liability claims. We affirm.

Douglas Koldenhoven (homeowner) decided to build his own house. He approached a lender for financing and was informed that he would need a general contractor in order to qualify for a construction loan. Homeowner contacted contractor, an acquaintance, and told him that he intended to build the house himself, but needed a general contractor in order to obtain a building permit and secure construction financing. Contractor agreed to act as general contractor for the identified purposes, but told homeowner that he was too busy to do any work on the project and homeowner would have to find his own subcontractors. Homeowner assented.

Contractor then represented to the lender that he was the general contractor on the job and signed blank construction loan disbursement requests certifying that labor and materials had been contributed to the project so that homeowner could draw on the construction loan. He applied for and received the building permit, which listed his company, Eagle View Homes, as the general contractor. Contractor was not otherwise involved in the construction of the home.

During construction, homeowner used friends and acquaintances, including Smit, many if not all without construction experience, to raise a twenty-four-foot-high wall. As the friends and acquaintances raised the wall, they reached a point beyond which they could not proceed because of the size and weight of the wall, and the wall fell back on them. Smit suffered serious injuries, including a broken back, broken ribs, a broken leg, and some permanent paralysis.

Plaintiffs sued homeowner and contractor on a number of negligence theories. On a motion for summary judgment, the trial court dismissed plaintiffs' negligence per se and vicarious liability claims against contractor. The matter went to trial on plaintiffs' direct negligence claim.

The trial was bifurcated on the issues of liability and damages pursuant to C.R.C.P. 42(b). The jury concluded that contractor was fifteen percent at fault, homeowner sixty-four percent at fault, and Smit seven percent at fault, with the remaining liability assigned to other participants in the raising of the wall. The jury, after a subsequent hearing, found that plaintiffs' damages were $3,764,350, resulting in judgment against contractor in the amount of $845,221 with interest and costs.

## I.

Contractor contends that the trial court erred in concluding that he owed a duty to Smit based solely on his having obtained the building permit. We disagree.

## A.

To recover on a claim of negligence, a plaintiff must establish the existence of a legal duty on the defendant's part, defendant's breach of that duty, causation, and damages. *See Davenport v. Community Corrections of Pikes Peak Region, Inc.,* 962 P.2d 963 (Colo.1998). A negligence claim therefore must fail if based upon circumstances for which the law imposes no duty of care upon the defendant. *See Martinez v. Lewis,* 969 P.2d 213 (Colo.1998).

The initial determination of whether a defendant owes a duty to the plaintiff, as well as the scope of that duty, is a question of law for the court. *See Bath Excavating & Construction Co. v. Wills,* 847 P.2d 1141 (Colo.1993). If a court determines that the defendant owed the plaintiff a legal duty, the question of whether the defendant has breached that duty and thereby caused the plaintiff damage is for the jury. *See Perreira v. State,* 768 P.2d 1198 (Colo.1989).

In determining whether a defendant owes a duty to a particular plaintiff, the law distinguishes between acting and failure to act, that is, misfeasance, which is active misconduct that injures others, and nonfeasance, which is a failure to take positive steps to protect others from harm. *See University of Denver v. Whitlock,* 744 P.2d 54 (Colo. 1987). The reason for this distinction is that a misfeasant creates a risk of harm; while the nonfeasant, although not creating a risk of harm, merely fails to benefit the injured party by interfering in his or her affairs. *See Perreira v. State, supra.* Thus, because in misfeasance the actor has created a new risk, and in nonfeasance the actor has simply preserved the status quo, the situations in which nonfeasance leads to liability are more circumscribed than those for misfeasance. *See Lego v. Schmidt,* 805 P.2d 1119 (Colo. App.1990).

Courts therefore apply different tests to establish whether a defendant owed a duty to the injured party depending on whether the alleged negligence is misfeasance or nonfeasance. *See Lewis v. Emil Clayton Plumbing Co.,* 25 P.3d 1254 (Colo.App.2000).

In nonfeasance cases, the existence of a duty has been recognized only in a limited number of special relationships between the parties such that social policy justifies the imposition of a duty to act. *See University of Denver v. Whitlock, supra; Lewis v. Emil Clayton Plumbing Co., supra.* Hence, there exists a duty to control the conduct of a third person to prevent him from causing physical harm to another only if a special relation exists between the nonfeasant and either the wrongdoer or the victim. *See Perreira v. State, supra; Lego v. Schmidt, supra.*

Relying primarily on *University of Denver v. Whitlock, supra,* contractor argues that he had no duty because he had no special relationship with Smit. Contractor's argument focuses on the breach of his obligation to supervise and maintain a safe construction site, in other words, on nonfeasance.

No special relationship is required, however, because we conclude that contractor was a misfeasant. Contractor "pulled" the building permit on homeowner's behalf and represented to both the county and the lender that he would act as general contractor, despite his express intent not to be involved in the project and his awareness of the unusual hazards associated with the raising of the wall. It therefore cannot be said that contractor merely maintained an existing circumstance, as would be the case were he a nonfeasant. Rather, Smit was put at risk of injury precisely because of contractor's actions. By representing himself as general contractor to secure financing and the building permit for an inexperienced builder, he created the circumstances that placed Smit at risk of harm.

### B.

 In determining whether to recognize a duty in a misfeasance case, courts must consider many factors, including the risk involved, the foreseeability and likelihood of injury as weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against injury or harm, and the consequences of placing the burden on the actor. *See Casebolt v. Cowan,* 829 P.2d 352 (Colo.1992); *Taco Bell, Inc. v. Lannon,* 744 P.2d 43 (Colo.1987). In addition, other considerations particular to the case may be relevant. No one factor is controlling, and the question of whether a duty should be imposed is essentially one of fairness under contemporary standards, as foreseeability includes whatever is likely enough in the setting of modern life that a reasonably thoughtful person would take it into account in guiding his or her practical conduct. *See Hilberg v. F.W. Woolworth Co.,* 761 P.2d 236 (Colo.App.1988), *overruled in part by Casebolt v. Cowan, supra.* Thus, a conclusion that a duty does or does not exist

is an expression of policy considerations that lead the law to say whether a plaintiff is entitled to protection. *See Casebolt v. Cowan, supra.*

It is evident from the testimony that raising this "balloon framed" wall involved considerable and foreseeable risk and should not have been undertaken by inexperienced persons. Contractor admitted that he recognized the dangers in raising the wall, as would have any reasonable and prudent contractor. He also stated that the task required an experienced leader or experienced workers. Contractor's act of using his license as a general contractor to pull a building permit for homeowner despite the fact that he never intended to work on or supervise the construction has little social utility. The same, of course, can be said for contractor's misrepresentations to the lender.

Contractor easily could have guarded against injury by refusing to represent himself as the general contractor, supervising the riskier parts of construction, or conditioning his agreement on the use of a specialist subcontractor or a crane to raise the wall. These relatively simple acts would have substantially reduced the risk of injury to Smit with little or no adverse impact on contractor.

Under prevailing contemporary standards of fairness, we are convinced that reasonable persons would recognize and agree that contractor owed a direct duty to supervise this construction project for the safety of those working there, including Smit. Contractor assumed substantial responsibility for initiating and sustaining the project, and he admitted that a general contractor has a responsibility for the safety of the construction site. Contractor has this responsibility even though Smit was not aware of the nature and extent of contractor's involvement.

Finally, any remoteness in contractor's breach of his duty in causing the injuries was reflected in the jury's allocation to him of only fifteen percent of the fault.

We therefore perceive no error in the trial court's conclusion that contractor owed a duty to Smit for the safety of the construction site.

## II.

We reject contractor's assertion that the trial court erroneously instructed the jury that he had a duty to supervise the work regardless of any side agreement or accommodation with homeowner.

At the outset, it is contractor's duty to Smit which is at issue here, not his duty to homeowner. Contractor relies on *Sewell v. Public Service Co.*, 832 P.2d 994 (Colo.App. 1991), for the proposition that a court may not decide as a matter of law the existence and scope of a duty when different reasonable inferences may be drawn about the foreseeability of harm resulting from the defendant's conduct. This reliance is misplaced.

*Sewell* states only that a court must *deny a motion for summary judgment* based upon an assertion of the lack of existence of a duty of care if the evidence is insufficient to allow the court to determine the issue of foreseeability as a matter of law. The trial court here in fact denied contractor's motion for summary judgment, which asserted a lack of duty. Nothing in *Sewell* constrains a court's right to determine, as a matter of law, the existence and scope of a duty. *See Bath Excavating & Construction Co. v. Wills, supra.*

An injury occurring on an inadequately supervised construction site is certainly a foreseeable event. An injury was especially foreseeable here when, according to contractor's own testimony, there were special hazards associated with the erection of the wall.

## III.

Contractor also contends that the trial court erred by admitting testimony about the nature and extent of Smit's injuries during the liability trial. We disagree.

■ C.R.C.P. 42(b) allows for bifurcated trials "in furtherance of convenience, *or* to avoid prejudice, *or* when separate trials will be conducive to expedition or economy" (emphasis added). Contractor fails to direct us to, nor are we able to find, any record concerning the trial court's hearing or findings on bifurcation. *See Westrac, Inc. v. Walker Field,* 812 P.2d 714 (Colo.App.1991)(party

must cite to portions of record that contain error). However, uncontested trial testimony establishes that plaintiffs had opposed bifurcation and that the trial court ordered bifurcation with an understanding that Smit would be allowed to describe briefly to the jury the nature of the injuries.

Absent a record demonstrating that contractor objected to that understanding, we must presume the trial court correctly admitted Smit's brief description of his injuries during the liability trial. *See Schuster v. Zwicker,* 659 P.2d 687 (Colo.1983)(party asserting error must present record that discloses error, because judgment presumed correct until contrary affirmatively appears).

## IV.

Contractor next contends that the trial court erred in not discharging a juror who informed the court during the damages trial that she may have been involved in treating Smit's injuries, or, alternatively, in not declaring a mistrial. We disagree.

■ The decision to excuse a juror will not be disturbed absent a gross abuse of discretion. *See People v. Christopher,* 896 P.2d 876 (Colo.1995). In determining whether to replace a juror with an alternate juror, the court considers: (1) the juror's assurance of impartiality; (2) the nature of the information withheld in voir dire; (3) whether the nondisclosure was deliberate; (4) any prejudicial effect the undisclosed information would have had on either party, including the parties' rights to exercise peremptory challenges; and (5) the practical remedies available when the nondisclosure is revealed. *See People v. Meis,* 837 P.2d 258 (Colo.App.1992).

■ A trial court has broad discretion to decide whether to grant a mistrial, and its decision will not be overturned absent an abuse of discretion and prejudice to a party. A mistrial is a drastic remedy, warranted only if the prejudice to a party cannot be remedied by other means. *See People v. Fears,* 962 P.2d 272 (Colo.App.1997).

Here, the juror revealed during voir dire her employment history at the hospital where Smit was treated and the possibility that she treated him. She also stated that

she did not remember Smit, was unfamiliar with the doctors in the case, and would not let her employment relationship affect her judgment. Contractor did not seek to remove her from the panel.

After the juror heard testimony about the time frame in the case, she promptly informed the court that the chances were good that she had seen or somehow been involved in Smit's care. She still did not remember Smit and remained unconcerned about her ability to be fair and impartial.

The juror's assurances of impartiality, the fact that she did not deliberately withhold information, and the marginal difference between her voir dire and later testimony weighed against discharging her, particularly because she did not recall Smit or know the doctors in the case. Contractor's claims of prejudice because of the juror's outside knowledge, despite her assurances that she had not discussed with other jurors anything relating to the evidence in the case, are, at best, speculative.

■■■ The court instructed the juror not to divulge to the other jurors any of the information revealed during the hearing on the extent of her knowledge and treatment of Smit. Absent a contrary showing, the juror is presumed to have understood and heeded the trial court's instructions. *See Technical Computer Services, Inc. v. Buckley*, 844 P.2d 1249 (Colo.App.1992).

Under these circumstances, we perceive no abuse of discretion in the trial court's refusal to discharge the juror or grant a mistrial.

### V.

On cross-appeal, plaintiffs contend that the trial court erred in dismissing their negligence per se and vicarious liability claims against contractor. Plaintiffs further assert that, if their contention is correct, the fact that we affirm with respect to their direct negligence claim does not render the error harmless because a revival of these claims could impact the allocation of fault. Therefore, so goes the argument, it was error to dismiss either or both of these claims, and the matter should be remanded for a jury trial on negligence per se and vicarious liabil-

ity without disturbing the first jury's conclusions on the direct negligence claim or damages. We disagree with the first contentions and therefore need not address the latter.

### A.

■■■ To establish a claim of negligence per se, the plaintiff must show that: (1) he or she is a member of the class the statute or ordinance was designed to protect; (2) the injuries suffered were of the kind the statute was enacted to prevent; and (3) the defendant violated the statute. *See Trinity Universal Insurance Co. v. Streza*, 8 P.3d 613 (Colo.App.2000); *Lego v. Schmidt, supra.*

■■ A statute should not be construed in a manner that defeats its legislative intent. *See City of Westminster v. Dogan Construction Co.*, 930 P.2d 585 (Colo.1997).

The Pikes Peak Regional Building Code states its purpose as follows:

The purpose of this building code is to provide minimum standards to protect the public health and safety by regulating and controlling buildings, structures, and equipment ... and adopting uniform codes, consistent with and generally conforming to similar ordinances and regulations throughout the Pikes Peak region, and to effect said purpose by acting with other governmental bodies in the Pikes Peak region in the promulgation of measures and procedures, and the establishment of committees and boards as herein provided, and establishing procedures for licensing contractors.

Pikes Peak Regional Building Code, art. I, § 16–1–102 (1994).

To support their negligence per se claim, plaintiffs rely on a code provision penalizing the use of a contractor's license "to obtain permits required under this Code for work that will not be performed by or supervised by the contractor." Pikes Peak Regional Building Code, art. I, § 16–6–109(C)(3) (1994).

In light of its announced purpose, we conclude that the particular section of the code relied upon by plaintiffs is designed primarily to ensure the construction of safe buildings,

and not the safe construction of buildings. Thus, although we disagree with the trial court's reasoning, the dismissal of plaintiffs' negligence per se claim was not error because Smit was not a member of the class the legislation was designed to protect. *See Jardel Enterprises, Inc. v. Triconsultants, Inc.,* 770 P.2d 1301 (Colo.App.1988)(correct judgment not disturbed on review even though reason for decision wrong).

### B.

Plaintiffs argue that contractor effectively subcontracted with homeowner to construct the residence, and, because there were inherent dangers associated with that construction, including the erection of the wall, contractor is vicariously liable for the negligence of homeowner. We disagree.

■ This argument fails in the absence of any contract between homeowner and contractor obligating contractor to construct the residence, and we decline to infer such a contract.

The evidence was undisputed that there was no contract between homeowner and contractor that obligated contractor to construct or supervise the construction of the residence. Indeed, it was undisputed that there was an agreement or understanding between homeowner and contractor that contractor had no such obligation. Plaintiffs therefore are unable to establish that homeowner was hired as an independent contractor for whose acts contractor could be vicariously liable. *See Grease Monkey International, Inc. v. Montoya,* 904 P.2d 468 (Colo.1995); *Moses v. Diocese of Colorado,* 863 P.2d 310 (Colo.1993).

Therefore, we conclude contractor is not vicariously liable to plaintiffs for the negligence of homeowner.

Accordingly, the judgment is affirmed.

Chief Judge HUME and Judge MARQUEZ concur.