Chris **MONTOYA,** Plaintiff–Appellant,

v.

**CONNOLLY'S TOWING, INC.,**
a Colorado corporation,
Defendant–Appellee.

No. 07CA0109.

Colorado Court of Appeals,
Div. III.

May 1, 2008.

Eley & Galloway, LLP, Daniel B. Galloway, Denver, Colorado, for Plaintiff–Appellant.

White & Steele, P.C., Brett N. Huff, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge TAUBMAN.

Plaintiff, Chris Montoya, appeals the trial court's summary judgment in favor of defendant, Connolly's Towing, Inc., and its subsequent judgment of dismissal. Additionally, Montoya appeals the trial court's order denying his motion to enforce his acceptance of a statutory offer of settlement. We affirm in part, reverse in part, and remand for further proceedings.

## I. Background

On Thursday, July 3, 2003, former defendant, Brian Cecil, was involved in an accident in which his 1967 Mustang was severely damaged. Cecil towed the Mustang to and left it at Connolly's storage lot the same day.

Believing that he did not have insurance to cover the Mustang's damage and he would have to pay for it to be taken to a salvage lot, Cecil returned to Connolly's lot on Sunday, July 6 and replaced the tires on the Mustang with older tires.

Thereafter, Cecil discovered that his insurance would cover the Mustang's damage. An insurance adjuster inspected the car at Connolly's, determined that it was totaled, and paid Cecil approximately $3000 for the vehicle. Klode Salvage, Inc. was hired to tow the Mustang to its lot for crushing.

On August 14, 2003, Montoya, one of Klode's employees, picked up the Mustang to transport it to Klode's lot. Connolly's connected the Mustang to Montoya's tow truck using its forklift. As Montoya towed the Mustang to Klode's lot, the left rear wheel fell off, knocking off the brake drum. When he pulled over to the shoulder and got out of his truck to pick up the pieces, a passing motor vehicle hit the brake drum, which hurtled into Montoya's right leg, shattering it.

Montoya's supervisor, Brian Dendorfer, immediately went to the accident scene to investigate. He discovered that some of the Mustang's lug nuts were missing. Dendorfer called Connolly's and spoke with John Connolly, Connolly's operations manager, inquiring about the missing lug nuts. John Connolly explained that the Mustang belonged to a friend, Cecil.

Thereafter, Montoya sued Cecil and Connolly's, asserting a claim for negligence. Cecil settled with Montoya. On August 1, 2006, Connolly's moved for summary judgment, arguing, inter alia, that it did not owe a duty to Montoya. On September 5, 2006, Montoya filed a response to Connolly's motion and a cross-motion for summary judgment, asserting that Connolly's owed him a duty as a matter of law.

While the motions for summary judgment were pending, Connolly's served Montoya on November 14, 2006 with a statutory offer of settlement. Montoya made a counteroffer the next day, which Connolly's rejected. On November 30, 2006, the trial court granted Connolly's motion for summary judgment and dismissed the case. After reviewing the summary judgment, Montoya attempted to accept Connolly's statutory offer of settlement on November 30.

Disagreeing about whether the acceptance of the statutory offer of settlement was valid, Montoya filed a motion to enforce the acceptance and Connolly's filed a motion for sanctions. The trial court denied Montoya's motion and granted Connolly's motion. This appeal followed.

## II. Montoya's Motion to Enforce the Statutory Offer of Settlement

Montoya contends the trial court erred in denying his motion to enforce his acceptance of Connolly's statutory offer of settlement because his acceptance was timely. We are not persuaded.

■ Initially, we note that Montoya's counteroffer to Connolly's offer of settlement did not preclude the later tender of his acceptance of that offer. In *Centric–Jones Co. v. Hufnagel*, 848 P.2d 942, 946 (Colo.1993), the supreme court interpreted a previous but similar version of section 13–17–202 and rejected the defendant's argument that the plaintiff's counteroffer operated as a rejection of the offer, cutting short the statutory period for acceptance. The court held that statutory offers of settlement are irrevocable for the statutory period. *Id.* Consequently, Montoya's counteroffer had no effect upon Connolly's offer of settlement; Connolly's offer was irrevocable during the fourteen-day statutory period for acceptance. This is so even though Montoya tendered his acceptance of the offer of settlement after the trial court's summary judgment. *Id.*

■ The interpretation of a settlement agreement, like that of any contract, is a question of law that we review de novo. *Ringquist v. Wall Custom Homes, LLC*, 176 P.3d 846, 849 (Colo.App.2007). Furthermore, the interpretation of statutes is a question of law subject to de novo review. *McIntire v. Trammell Crow, Inc.*, 172 P.3d 977, 979 (Colo.App.2007).

Statutory offers of settlement are governed by section 13–17–202, C.R.S.2007. "If an offer of settlement is not accepted in writing within fourteen days after service of the offer, the offer shall be deemed rejected . . . ." § 13–17–202(1)(a)(III), C.R.S.2007. Alternatively, "[i]f an offer of settlement is accepted in writing within fourteen days after service of the offer, the offer of settlement shall constitute a binding settlement agreement, fully enforceable by the court in which the civil action is pending." § 13–17–202(1)(a)(IV), C.R.S.2007.

■ Montoya contends his acceptance of the statutory offer of settlement was timely because Connolly's e-filed the offer of settlement, and, therefore, he was entitled to a three-day extension of time within which to accept the offer pursuant to C.R.C.P. 5, 6(e), 121 § 1–26(6). We disagree.

■ When construing statutes, our primary duty is to give effect to the intent of the General Assembly, looking first to the statute's plain language. *McIntire*, 172 P.3d at 979. We give the statute its plain and ordinary meaning whenever possible. *Bumbal v. Smith*, 165 P.3d 844, 845 (Colo.App. 2007). We interpret procedural rules, like statutes, as a whole and in a manner that gives consistent, harmonious, and sensible effect to each part whenever possible. *People in Interest of S.M.A.M.A.*, 172 P.3d 958, 961 (Colo.App.2007).

C.R.C.P. 121 section 1–26(6) provides that "E–Service shall entitle the party being served [to] an additional 3 days as provided by C.R.C.P. 6(e)." "Unless otherwise specifically ordered, whenever a party must or may act within a prescribed period after service is made under C.R.C.P. 5(b)(2)(B), (C), or (D) [,] three days shall be added after the prescribed period would expire under Section (a) of this Rule." C.R.C.P. 6(e). C.R.C.P. 5(a) requires service of various documents, including an offer of settlement, and C.R.C.P. 5(b)(2)(D) permits service by E–Service.

■ However, "when a statute sets forth a particular procedure, court-promulgated rules simply do not apply." *People in Interest of S.M.A.M.A.*, 172 P.3d at 961; *see also State Bd. of Registration v. Brinker*, 948 P.2d 96, 99 (Colo.App.1997) ("when a statute specifically establishes that the filing period begins at the time of mailing and provides that it ends a certain number of days later, the three day 'mailing window' of C.R.C.P. 6(e) does not apply"); *cf. Indus. Claim Appeals Office v. Zarlingo*, 57 P.3d 736, 737–38 (Colo.2002) (when the deadline for filing a notice of appeal is defined by statute and the applicable statute establishes that the time for filing is triggered by the date the order appealed is mailed to the parties, additional three days for mailing inapplicable).

Montoya argues that when these procedural rules are read together, the fourteen-day period for acceptance of a statutory offer of settlement should be extended by three days because Connolly's served him with the offer of settlement via E–Service.

Although Montoya does not cite C.R.C.P. 6(a), C.R.C.P. 6(e) refers to it—"three days shall be added after the prescribed period

would expire under Section (a) of this Rule." C.R.C.P. 6(a) provides, in pertinent part, that it applies *"[i]n computing any period of time prescribed or allowed by these rules."* Therefore, based upon the plain language of C.R.C.P. 6(a) and (e), the three-day extension applies only to periods set forth in the rules. Contrary to Montoya's contention, although C.R.C.P. 5 permits service of an offer of settlement by E–Service, it does not prescribe a period of time for responding to an offer of settlement.

Here, section 13–17–202(1)(a)(III), rather than a rule, establishes the period for accepting an offer of settlement. Thus, the three-day extension of time set forth in C.R.C.P. 6(e) does not apply.

Consequently, we conclude the trial court properly denied Montoya's motion to enforce his acceptance of Connolly's offer of settlement as untimely.

### III. Whether Connolly's Owed Montoya a Duty

Montoya next contends the trial court erred when it concluded that Connolly's did not owe him a duty of care. Specifically, he argues the court incorrectly analyzed whether Connolly's owed him a duty based upon bailment law. Montoya further asserts that Connolly's owed him a duty as a matter of law based upon either misfeasance or nonfeasance. We agree.

### A. Standard of Review

■ "Whether a specific defendant owes a duty to a specific plaintiff under the circumstances involved with a tort claim is a question of law we review de novo." *Raleigh v. Performance Plumbing & Heating, Inc.,* 130 P.3d 1011, 1015 (Colo.2006); *see also English v. Griffith,* 99 P.3d 90, 93 (Colo.App.2004).

■ Additionally, we review the grant of a summary judgment motion de novo, as it is ultimately a question of law. *W. Elk Ranch, L.L.C. v. United States,* 65 P.3d 479, 481 (Colo.2002). In determining whether summary judgment is proper, we give the nonmoving party the benefit of all favorable inferences that may reasonably be drawn from the undisputed facts, and all doubts

must be resolved against the moving party. *Casebolt v. Cowan,* 829 P.2d 352, 354 (Colo. 1992); *Jones v. Dressel,* 623 P.2d 370, 373 (Colo.1981).

### B. Undisputed Facts

Based upon our review of the attachments supporting and opposing the cross-motions for summary judgment, including the partial depositions of Connolly, Cecil, Montoya, and Dendorfer, we note that the following facts are undisputed.

Cecil towed his Mustang to Connolly's storage facility on Thursday, July 3, 2003, and Connolly's gave him permission to store the vehicle on its lot. At that time, Cecil believed that his insurance would not cover the Mustang's damage, and he would, therefore, need to pay for it to be towed to a salvage lot. Cecil returned to Connolly's lot on Sunday, July 6, and replaced the tires on the Mustang with older ones.

On August 14, 2003, Montoya towed the Mustang from Connolly's facility, intending to take it to Klode's salvage lot. Before Montoya towed the Mustang, no one from Connolly's told him that Connolly's customer safety rules had not been applied to the care of the Mustang. Connolly's does not have a crusher, and, thus, vehicles on its lot must be transported to a salvage lot for crushing.

Furthermore, Connolly's "Rules for Persons in the Yard" explained that customers who wished to enter the storage yard were required to be accompanied by an employee and were only allowed ten minutes to view their vehicle and retrieve their personal belongings. The lot was closed to the public on Sundays, and the rules were strictly enforced. The rules existed, at least in part, for safety reasons. However, Connolly's did not apply these rules to friends and family members, who could, with Connolly's permission, enter the storage lot unsupervised, for more than ten minutes, and on Sundays.

### C. Application of Bailment Law

■ Montoya contends that the trial court erred when it applied bailment law in determining that Connolly's did not owe him a duty. We agree.

"A bailment is a delivery of personal property by one person to another in trust for a specific purpose, with an express or implied contract that the property will be returned or accounted for when the specific purpose has been accomplished or when the bailor reclaims the property." *Christensen v. Hoover*, 643 P.2d 525, 528–29 (Colo.1982). "Thus, the bailee's right to control the property is subject to the rights of the bailor." *Payberg v. Harris*, 931 P.2d 544, 545 (Colo. App.1996). "Once a bailment relationship has been established, the law imposes upon the bailee certain duties and obligations with respect to the bailed property in his possession." *Christensen*, 643 P.2d at 529.

In its summary judgment, the trial court concluded that a bailment relationship existed between Connolly's and Cecil with respect to the Mustang. We agree.

However, the relevant inquiry here is not whether Connolly's owed a duty to the owner of the Mustang as to the bailed property, but rather whether Connolly's owed a duty to Montoya. *See Chabot v. Williams Chevrolet Co.*, 30 Colo.App. 277, 279, 491 P.2d 612, 614 (1971) (citing *Hipps v. Hennig*, 167 Colo. 358, 361, 447 P.2d 700, 701 (1968), and holding that "when goods are delivered to a bailee in good condition and he can redeliver them only in a damaged condition, a presumption of negligence on the part of the bailee arises"). The existence of a bailment relationship and, thus, Connolly's duty as the bailee to protect the Mustang, are separate and distinct from whether Connolly's, as a storage facility with customer safety rules, had a duty to a third party, such as Montoya, either to apply its safety rules to the owners of all vehicles on its lot or to disclose to third parties that the vehicles owned by friends and family members were treated differently from customers' vehicles. *See, e.g., Vrooman v. Beech Aircraft Corp.*, 183 F.2d 479 (10th Cir.1950) (although a bailment relationship existed between airplane manufacturer and airplane owner, airplane manufacturer had a separate and distinct duty to airplane pilot to repair the airplane); *see also Matt Skorey Packard Co. v. Canino*, 142 Colo. 411, 350 P.2d 1069 (1960) (although a bailment relationship existed between garage and vehicle owner, garage had a separate duty of care to vehicle owner to warn of dangerous conditions at the garage).

Accordingly, we conclude the trial court erred in determining that bailment law was dispositive of Connolly's duty to Montoya.

### D. Duty Based on Misfeasance or Nonfeasance

Montoya next contends the trial court erred when it concluded that Connolly's did not owe him a duty based upon either misfeasance or nonfeasance. We agree that there is a duty of care based on misfeasance.

"[T]he first question in any negligence case is whether the defendant owed a legal duty to protect the plaintiff from injury." *Raleigh*, 130 P.3d at 1015. In some circumstances, a duty may be imposed when a person renders services to another which he or she should recognize as necessary for the protection of a third party, the third party is physically injured, and the person's failure to exercise reasonable care increases the risk of harm to the third party or that the harm resulted from the third party's reliance on the person's actions. *See* Restatement (Second) of Torts § 324A(a), (c); *May Dep't Stores Co. v. University Hills, Inc.*, 789 P.2d 434, 441 (Colo.App.1989).

"A negligence claim fails when it is based on circumstances for which the law does not impose a duty." *English*, 99 P.3d at 93.

As noted, we review the determination of whether a duty exists de novo. *See id.*

To determine whether the law imposes a duty on a defendant, "relevant factors include (1) the risk involved; (2) the foreseeability of harm to others and likelihood of injury as weighed against the social utility of the actor's conduct; (3) the magnitude of the burden of guarding against the injury or harm; and (4) the consequences of placing the burden on the actor." *Id.* at 94. "A court may consider any other relevant factors based on the competing individual and societal interests implicated by the facts of the case." *Id.* "The question is one of fairness under contemporary standards, that

is, whether reasonable persons would recognize and agree that a duty of care exists." *Id.*

■ Additionally, "[i]n determining whether a defendant owes a duty to a particular plaintiff, the law distinguishes between acting and failure to act, that is, misfeasance, which is active misconduct that injures others, and nonfeasance, which is a failure to take positive steps to protect others from harm." *Smit v. Anderson,* 72 P.3d 369, 372 (Colo.App.2002).

■ "The reason for this distinction is that a misfeasant creates a risk of harm; while the nonfeasant, although not creating a risk of harm, merely fails to benefit the injured party by interfering in his or her affairs." *Id.* "Thus, because in misfeasance the actor has created a new risk, and in nonfeasance the actor has simply preserved the status quo, the situations in which nonfeasance leads to liability are more circumscribed than those for misfeasance." *Id.* Accordingly, in nonfeasance cases, the plaintiff has the added burden of establishing that a special relationship exists between the parties such that social policy justifies the imposition of a duty to act. *Id.*

Two salient cases discussing the distinction between misfeasance and nonfeasance are *University of Denver v. Whitlock,* 744 P.2d 54 (Colo.1987), and *Smit v. Anderson.* In *Whitlock,* the plaintiff brought a negligence action against the university for injuries he sustained in a trampoline accident at his fraternity house, which was owned by the university. The court concluded that, because the university did not create a new risk but merely failed to protect the plaintiff by not interfering in his affairs, the university did not owe him a duty of care based upon misfeasance. *Whitlock,* 744 P.2d at 57–58. Additionally, the court concluded that a student-university relationship was not sufficient for nonfeasance, no other special relationship existed between the plaintiff and the university, and, therefore, the university did not owe the plaintiff a duty of care based upon nonfeasance.

In *Smit,* the plaintiff, who assisted a friend in constructing a wall, brought a negligence action against a contractor for the injuries he sustained when the wall fell on him. The contractor argued that, based on the *Whitlock* analysis and his explicit agreement with the plaintiff's friend that he did not have time to supervise the project, he did not owe a duty to the plaintiff. The division, however, concluded that, because the contractor obtained the building permit and represented to both the county and the lender that he would act as a general contractor, the contractor created the circumstances that placed the plaintiff at risk of harm, and, therefore, the contractor owed the plaintiff a duty of care based upon misfeasance.

■ Here, similar to *Smit,* Connolly's permitted the Mustang to be stored on its lot and represented to the public that its customer safety rules applied to all vehicles stored therein. Connolly's thus created the circumstances that placed Montoya at risk of harm by not uniformly applying its safety rules and thus permitting Cecil to alter the condition of the Mustang, or, alternatively, by not disclosing to Montoya that its customer safety rules did not apply to Cecil's Mustang. Accordingly, we conclude that any duty of care imposed on Connolly's is based on misfeasance. Thus, we need not consider whether a special relationship existed between Connolly's and Montoya, and we now consider whether the law imposes a duty of care on Connolly's based on misfeasance.

■ Applying the first prong of the duty analysis, we consider the risk involved. Because Connolly's did not uniformly apply its customer safety rules or, alternatively, did not disclose to third parties that the customer safety rules did not apply to some individuals' vehicles, Connolly's created a risk that either friends and family members using its storage lot or third parties could be injured. *See* Restatement (Second) of Torts § 324A(a).

While the safety rules were intended to protect customers, they were also intended to protect third parties. In opposition to the summary judgment motion, evidence was presented from John Connolly's deposition that: (1) there is a risk if a tire is not changed properly; (2) not tightening lug nuts

could result in a wheel falling off and injuring or killing a third party; (3) changing a tire properly is an important safety issue for vehicles that may be towed; and (4) had Connolly's employees seen Cecil changing his tires, they would have used Connolly's forklift to take Cecil's Mustang to its shop and changed the tires properly. Montoya, an employee of a company that regularly did business with Connolly's, would reasonably assume, when towing a vehicle away from Connolly's yard, that the customer safety rules applied to all vehicles, including Cecil's Mustang.

Under the second prong of the duty analysis, we consider issues of foreseeability and social utility. As noted, during his deposition, Connolly acknowledged that the customer rules existed for safety reasons. Thus, the likelihood of injury to a third party like Montoya, who regularly conducted business with Connolly's, was foreseeable. Furthermore, Connolly's failure to apply its own safety rules here had little social utility; it was merely helping a friend, without taking any steps to prevent harm to third parties such as Montoya. Thus, the foreseeability of harm to others and likelihood of injury here outweighed the social utility of Connolly's conduct.

Under the third prong of the duty analysis, we address the magnitude of the burden of guarding against injury or harm. Connolly's could have easily guarded against injury or harm to Montoya by applying its customer safety rules to friends and family members or, alternatively, advising third parties, such as Montoya, that Connolly's safety rules had not been applied to the vehicles of friends and family members. It would not have been difficult for Connolly's to uniformly apply its customer safety rules to customers, friends, and family members. Such action would have substantially reduced the risk of injury to Montoya with little or no adverse impact on Connolly's. *See Smit*, 72 P.3d at 373.

Alternatively, if Connolly's believed the burden of uniformly applying customer safe-

ty rules to anyone visiting the yard was too great, it could have simply informed third parties retrieving vehicles owned by friends or family members that the customer safety rules did not apply to such individuals' vehicles and that the vehicles must be retrieved at the third parties' own risk.

Under the fourth prong of the duty analysis, we consider the consequences of placing the burden of guarding against injury on Connolly's. Because Connolly's chose to selectively apply its safety rules, it was in the best position to bear the burden of disclosing to third parties when the customer safety rules did not apply. It is unreasonable for Connolly's to hold itself out as a professional vehicle storage lot, yet allow some individuals, such as Cecil, not to abide by the rules without disclosing its differential application of its safety rules.

Considering the four prongs of the duty analysis, we conclude Connolly's had a duty to apply its customer safety rules uniformly or, alternatively, to disclose to third parties that its customer safety rules were not applied to vehicles owned by certain individuals. Because Connolly's owed a legal duty of care to Montoya, we conclude the trial court erred in granting summary judgment in favor of Connolly's.

Furthermore, to the extent Connolly's asserts that Montoya was comparatively negligent for failing to carefully inspect the Mustang prior to transporting it, this argument does not negate Connolly's duty of care to Montoya. However, at trial, Connolly's may of course argue that Montoya was comparatively negligent.

### IV. Connolly's Motion for Sanctions

In addition to arguing that Montoya's acceptance of the statutory offer of settlement was untimely, Connolly's contends that we should affirm the trial court's order sanctioning Montoya and awarding Connolly's reasonable costs and attorney fees. However, the trial court withdrew its order awarding sanctions pending this appeal. Accordingly,

there is no order for us to review, and, thus, we need not address Connolly's contention. *See Mitchell v. Ryder,* 104 P.3d 316, 323 (Colo.App.2004) (without a final and appealable order, an appeal is premature).

The order regarding the settlement offer is affirmed. The judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

Judge LOEB and Judge HAWTHORNE concur.