The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
August 1, 2019

**2019COA119**

**No. 18CA1047, *Blakesley v. BNSF Railway Company* — Torts — Personal Injury — Negligence — Duty of Care — Misfeasance**

In this personal injury case, the division holds that a person who has jobsite authority owes a duty of care based on misfeasance in giving jobsite safety instructions.

COLORADO COURT OF APPEALS                                   **2019COA119**

Court of Appeals No. 18CA1047
City and County of Denver District Court No. 14CV31144
Honorable Elizabeth A. Starrs, Judge

Richard Blakesley,

Plaintiff-Appellant,

v.

BNSF Railway Company,

Defendant-Appellee.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE BERGER
Dunn and Casebolt*, JJ., concur

Announced August 1, 2019

Evan Case, LLP, John M. Case, Centennial, Colorado; Dworkin, Chambers, Williams, York, Benson & Evans, P.C., Steven G. York, Denver, Colorado, for Plaintiff-Appellant

Fowler, Schimberg, Flanagan & McLetchi, P.C., Daniel M. Fowler, Brian E. Widmann, Golden, Colorado, for Defendant-Appellee

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2018.

¶ 1     In this personal injury action, plaintiff Richard Blakesley contends that defendant BNSF Railway Company is liable to him for the damages he sustained on a construction site when an excavator ran over his foot, ultimately resulting in amputation of his leg below the knee.  After this court partially reversed an earlier summary judgment in favor of BNSF, *Blakesley v. BT Construction, Inc.*, (Colo. App. No. 16CA0763, Mar. 30, 2017) (not published pursuant to C.A.R. 35(e)) (*Blakesley I*), BNSF again moved for summary judgment, contending that it owed no duty of care to Blakesley. The trial court agreed with BNSF and dismissed Blakesley's negligence claim.  Blakesley again appeals, and we reverse.

¶ 2     The only issue before us is whether BNSF owed Blakesley a duty of care when a BNSF employee instructed Blakesley, in contravention of BNSF's jobsite rules, that he did not have to wear a high visibility safety vest at certain times on the jobsite.  Because the BNSF employee was in a position of authority regarding the high visibility vest requirement, he owed a duty of care when

1

providing jobsite safety instructions regarding the vests.[1]  So, when he provided Blakesley instructions regarding the high visibility vest requirement, he, and thus BNSF, owed Blakesley a duty to provide reasonable instructions.

## I.     Relevant Facts and Procedural History

¶ 3     Blakesley, a welder, was injured while working on the Gold Line light rail project in Denver when an excavator crushed his foot. The Regional Transportation District (RTD) had employed BT Construction, Inc. (BTC), to install utilities along the light rail line, and BTC subcontracted with Mountain Man Welding, Blakesley's employer, to provide a welder.  Part of the light rail line ran through BNSF's rail yard, including BTC's construction site where the injury occurred.

¶ 4     BNSF employed a "flagger" to protect BNSF property during the construction and to ensure that BNSF trains ran smoothly in the rail yard.  The BNSF flagger was also responsible for conducting safety meetings in the mornings and meeting with anyone before

---

[1] To be clear, this duty applied only to the act of giving the instruction.  The instruction did not create any further duty to protect Blakesley either before or after the instruction was given.

they entered the jobsite to explain BNSF's safety policies. These safety policies included a requirement that everyone in the vicinity of the railroad tracks wear a high visibility safety vest.[2]

¶ 5    On arriving at the job site, Blakesley spoke with the BNSF flagger, who told him of BNSF's high visibility safety vest requirement. Blakesley then asked if he could remove his high visibility safety vest — which was flammable — while he was welding and cutting.[3] The BNSF flagger said that he could, explaining at his deposition that he "thought that was a good action" based on the vest's flammability.

¶ 6    Not long after that conversation, an excavator ran over Blakesley's foot while he was positioning a large pipe to be cut. He was not wearing a high visibility safety vest at that time.

---

[2] Federal regulations promulgated by the Occupational Safety and Health Administration and other federal agencies may also have required the wearing of high visibility safety vests, but our decision does not depend on whether federal regulations were violated when the BNSF flagger permitted Blakesley to remove his vest. *See, e.g.*, 29 C.F.R. § 1926.651(d) (2018); Occupational Safety and Health Administration, Standard Interpretation: *Whether use of high-visibility garments by construction workers in highway work zones is required* (Aug. 5, 2009), https://perma.cc/F4US-44FX.

[3] Blakesley's employer had provided him with a high visibility safety vest, but, inexplicably, the vest was flammable, an obviously poor fit for a welder.

¶ 7　　Blakesley sued several defendants, including BNSF, alleging negligence.  The district court granted summary judgment in favor of all defendants based primarily on the Workers' Compensation Act.

¶ 8　　Blakesley appealed, and a division of this court affirmed as to all defendants except BNSF, which was not Blakesley's employer and thus was not protected by the Workers' Compensation Act.  *Id.* The division concluded that BNSF owed no duty of care to Blakesley under the terms of BNSF's contract with RTD, but it remanded the case to determine whether any issues of material fact existed regarding the conversation between Blakesley and the BNSF flagger, and "whether that conversation created a duty outside the scope of the contract . . . ." *Id.*

¶ 9　　On remand, the district court concluded that no issues of material fact existed, BNSF did not owe a duty of care to Blakesley, and BNSF was entitled to judgment as a matter of law.

## II.　Duty of Care

¶ 10　　Blakesley contends the district court erred in concluding that the BNSF flagger, and thus BNSF, did not owe him a duty of care

when giving him jobsite safety instructions regarding the high

visibility vest requirement.[4]  We agree.

A.    Standard of Review and Applicable Law

¶ 11    We review a summary judgment de novo.  *Montoya v.*

*Connolly's Towing, Inc.*, 216 P.3d 98, 103 (Colo. App. 2008).

¶ 12    To recover on a negligence claim, "a plaintiff must establish

the existence of a legal duty on the defendant's part, defendant's

breach of that duty, causation, and damages."  *Smit v. Anderson*, 72

P.3d 369, 372 (Colo. App. 2002).  Whether a defendant owes a duty

to a particular plaintiff and the scope of any duty owed are

questions of law that we review de novo.  *Metro. Gas Repair Serv.,*

*Inc. v. Kulik*, 621 P.2d 313, 317 (Colo. 1980); *Command Commc'ns,*

*Inc. v. Fritz Cos.*, 36 P.3d 182, 189 (Colo. App. 2001).

¶ 13    "In determining whether a defendant owes a duty to a

particular plaintiff, the law distinguishes between acting and failure

---

[4] Blakesley specifically contends that the district court (1) failed to follow the mandate of *Blakesley v. BT Construction, Inc.*, (Colo. App. No. 16CA0763, Mar. 30, 2017) (not published pursuant to C.A.R. 35(e)); (2) applied nonfeasance standards in a misfeasance case; and (3) incorrectly applied those standards.  Because we review de novo and conclude that a duty of care based on misfeasance applied, we do not further address these specific contentions.

5

to act, that is, misfeasance, which is active misconduct that injures others, and nonfeasance, which is a failure to take positive steps to protect others from harm." *Smit*, 72 P.3d at 372.

¶ 14    The reason for the distinction is that "by 'misfeasance' the defendant has created a new risk of harm to the plaintiff, while by 'nonfeasance' he has at least made his situation no worse, and has merely failed to benefit him by interfering in his affairs." *Univ. of Denver v. Whitlock*, 744 P.2d 54, 57 (Colo. 1987) (quoting William Lloyd Keeton, Dan B. Dobbs, Robert E. Keeton & David G. Owen, *Prosser and Keeton on the Law of Torts* § 314, at 373 (5th ed. 1984)).

¶ 15    To decide this appeal, we consider misfeasance, rather than nonfeasance, because the BNSF flagger is alleged to have "created a new risk of harm" to Blakesley when he told him, contrary to BNSF's jobsite rule, that he did not have to wear a high visibility safety vest at certain times on the jobsite.[5] *Id.*

---

[5] On appeal, Blakesley does not contend that BNSF had any duty to him based on nonfeasance or assumption of duty, so we do not further address those questions. *See Jefferson Cty. Sch. Dist. R-1 v. Justus by and through Justus*, 725 P.2d 767, 771 (Colo. 1986) (describing the test for whether a defendant has assumed a duty of care).

¶ 16    When determining the existence and scope of any particular

duty in a misfeasance case, we consider (1) the risk involved; (2) the

foreseeability and likelihood of injury as weighed against the social

utility of the actor's conduct; (3) the magnitude of the burden of

guarding against injury or harm; and (4) the consequences of

placing the burden upon the actor.  *Smit*, 72 P.3d at 373 (citing

*Casebolt v. Cowan*, 829 P.2d 352 (Colo. 1992)).

> No one factor is controlling, and the question
> of whether a duty should be imposed is
> essentially one of fairness under contemporary
> standards, as foreseeability includes whatever
> is likely enough in the setting of modern life
> that a reasonably thoughtful person would
> take it into account in guiding his or her
> practical conduct. . . .  Thus, a conclusion that
> a duty does or does not exist is an expression
> of policy considerations that lead the law to
> say whether a plaintiff is entitled to protection.

*Id.*

¶ 17    To determine whether BNSF owed a duty of care based on

misfeasance, we consider the factors described in *Smit* as well as

the analysis in other cases in which the Colorado courts have

applied those factors.  *Westin Operator, LLC v. Groh*, 2015 CO 25;

*Casebolt*, 829 P.2d 352; *Montoya*, 216 P.3d 98; *Smit*, 72 P.3d 369.

¶ 18    In each of those cases, the court concluded that a duty of care applied to the defendant's misfeasance:

- A hotel owed a duty of care in evicting intoxicated guests into a winter night. *Westin*, ¶ 32.

- A vehicle storage lot owner owed a duty of care because he allowed a visitor to violate the lot's safety rules. *Montoya*, 216 P.3d at 105.

- A company that agreed to be the general contractor of a construction site but did not supervise the site owed a duty of care. *Smit*, 72 P.3d at 373.

- A business owner owed a duty of care when he allowed an employee, who had been drinking, to drive a company car. *Casebolt*, 829 P.2d at 361.

### B.    Analysis

#### 1.    Risk Involved

¶ 19    As to the first factor, the risk involved, *Westin, Montoya, Smit,* and *Casebolt* all involved the risk of serious bodily injury. *Montoya* concluded that, by "not uniformly apply[ing] its customer safety rules," the lot owner "created a risk that either friends and family members using its storage lot or third parties could be injured."

8

216 P.3d at 105. Similarly, here, by not uniformly applying BNSF's jobsite safety standards, which the BNSF flagger himself was tasked with enforcing, the flagger created the risk that an equipment or train operator would not see Blakesley because he was not wearing a high visibility safety vest and cause him serious bodily injury as a result.

### 2. Foreseeability and Likelihood of Injury Weighed Against the Conduct's Social Utility

¶ 20    In *Westin*, ¶ 35, it was foreseeable that evicting inebriated hotel guests on a cold, winter night might lead to a drunk driving accident. Similarly, in *Casebolt*, 829 P.2d at 361, it was foreseeable that leaving the company car in the care of an employee who had been drinking might lead to a drunk driving accident. And in *Smit*, 72 P.3d at 373, it was foreseeable that failing to supervise a particularly dangerous step in the construction process might result in serious physical injury.

¶ 21    In *Montoya*, 216 P.3d at 106, the division concluded that a tow truck driver's injury was the foreseeable result of the failure to uniformly apply the lot's safety rules. The owner of a vehicle storage lot, in contravention of the lot's rules, allowed a friend onto

the lot unsupervised, where the friend replaced the tires on his Mustang with older ones before having it towed to a separate salvage lot. *Id.* at 103. While the Mustang was being towed, one of its wheels fell off because the lug nuts had not been properly replaced. *Id.* at 101. When the Mustang's wheel fell off, the tow truck driver stopped and got out of the truck to see what had happened. *Id.* Then, a passing car struck a brake drum that had been dislodged when the wheel fell off, propelling it into the driver with such force that it shattered his leg. *Id.* at 101.

¶ 22 The injury in this case was significantly more foreseeable and likely than the injury in *Montoya* and similar in terms of foreseeability and likelihood to the injuries in *Westin*, *Smit*, and *Casebolt.* The purpose of the high visibility vest was obvious both at the time of Blakesley's injuries and now. The record reflects that there was a jobsite rule, imposed by BNSF, that all workers on the site were required to wear high visibility vests, precisely to avoid the harm that ultimately befell Blakesley.

¶ 23 To support its summary judgment order, the district court relied on its conclusion that "the risk contemplated by [Blakesley] and the [BNSF flagger] was the risk of [Blakesley's] vest catching

fire." But the proper inquiry in duty of care analysis is not what risks the BNSF flagger actually considered. Instead, we must ask whether a reasonable person would have considered the risk of the injury that occurred. *Smit*, 72 P.3d at 372. And, for the reasons discussed above, we conclude that a "reasonably thoughtful person," when providing instructions regarding the use or non-use of the high visibility safety vest, would take into account that removing the high visibility safety vest would increase the risk of being run over by jobsite machinery. *Id.* at 373.

¶ 24 As to social utility, the division in *Montoya*, 216 P.3d at 106, observed that there was little social utility in allowing the Mustang owner to break the lot's safety rules and concluded that the likelihood of injury far outweighed the social utility of the lot owner's conduct.

¶ 25 Viewed in a vacuum, the social utility in the flagger's instruction was that it allowed Blakesley to continue his work without the risk of his high visibility vest catching fire. But this perspective ignores (1) the fact that decreasing the fire risk increased the risk that he might be hit or run over by jobsite

11

machinery and (2) that other readily available courses of action would not have increased Blakesley's risk of being run over.

¶ 26 The BNSF flagger could have declined to answer Blakesley's question, leaving it to Blakesley and the general contractor to address the question. Or he could have expressly told Blakesley to address his question to the job superintendent. Or, he could have told Blakesley that he needed to obtain a nonflammable high visibility vest.[6]

¶ 27 Instead, the BNSF flagger told him he did not have to wear the high visibility vest at certain times, creating an obvious risk of harm that would not have existed had the flagger either enforced BNSF's jobsite safety standards or chosen one of the other options.[7] Considering these circumstances, we conclude that the likelihood of injury outweighed any social utility of the flagger's instruction to disregard BNSF's high visibility vest requirement.

---

[6] The record reflects that nonflammable high visibility vests could have been made available at the time of Blakesley's injuries.
[7] We express no opinion on the reasonableness of the BNSF flagger's instruction or the reasonableness of the other options available to him.

### 3. Magnitude of the Burden of Guarding Against the Injury

¶ 28    Third, as to the magnitude of the burden of guarding against the injury, in *Westin, Montoya, Smit,* and *Casebolt,* the court concluded that the burden was low because there were other courses of action the defendant easily could have taken to reduce or eliminate the risk involved.  For instance, in *Westin,* ¶ 36, multiple "relatively low-cost options [were] available" — the hotel could have called the intoxicated guests a taxi, allowed them to wait in the lobby until a taxi arrived, or called the police.  Similarly, in *Smit,* 72 P.3d at 373, the contractor could have refused to serve as general contractor, supervised the wall raising itself, or required the use of a subcontractor.

¶ 29    The burden is even lower here because, as discussed above, the flagger could easily have declined to authorize a departure from BNSF's jobsite safety standards; declined to answer the question, thus deferring any responsibility; or told Blakesley to obtain a nonflammable high visibility vest, thus avoiding the risk of harm that his permission created.

#### 4.    Consequences of Placing the Burden on BNSF

¶ 30    Finally, as to the consequences of placing the burden on BNSF, the division in *Montoya* concluded that the lot owner "was in the best position to bear the burden of disclosing to third parties when the customer safety rules did not apply" and that it was "unreasonable for [the lot] to hold itself out as a professional vehicle storage lot, yet allow some individuals . . . not to abide by the rules . . . ." *Montoya*, 216 P.3d at 106.  Similarly, if BNSF requires high visibility safety vests on the jobsite, but then permits workers under various circumstances not to abide by that rule, it is entirely appropriate that BNSF be responsible for the consequences of allowing an individual not to wear a high visibility safety vest.

¶ 31    The district court noted the BNSF flagger's lack of contractual authority on the jobsite, but the record before us shows that the BNSF flagger had some level of authority with respect to the wearing of high visibility vests — he conducted safety meetings, met with individuals before they entered the jobsite to provide safety instructions, required everyone (apparently except Blakesley) to wear the vests, and instructed Blakesley as to when he should and should not wear the vest.

14

¶ 32    Under these circumstances, and considering the *Smit* factors discussed above, we conclude that when the BNSF flagger gave Blakesley jobsite safety instructions, he, and thus BNSF, owed a duty to provide reasonable instructions.

### III.    Other Considerations

¶ 33    We must make clear what we do not decide.  We do not conclude that the BNSF flagger's instruction created a duty to then supervise Blakesley or otherwise oversee the jobsite beyond BNSF's contractual responsibilities.  The duty of care applied only to the act of giving the instruction.

¶ 34    We do not conclude whether the BNSF flagger breached the duty of care owed Blakesley when he instructed him that he did not have to wear his high visibility vest at certain times on the jobsite.  That question is for determination on remand.

¶ 35    Further, events occurring after the instruction was given are relevant to other elements of tort analysis not before us on this appeal.  We do not consider, for instance, whether Blakesley was following the BNSF flagger's instruction when he was injured.  Though the district court concluded that Blakesley was not following the instruction when he was hit by the excavator, that is

relevant to causation, not the existence of a duty.[8]  Similarly, we do

not consider whether Blakesley's later conversation with the BTC

spotter and equipment operator would impact the liability, if any, of

BNSF, under the doctrines of intervening cause, comparative

negligence, or otherwise.

¶ 36     And, of course, we express no opinion regarding either the

ultimate validity of Blakesley's claim or the multitude of defenses

raised by BNSF.

## IV.   Conclusion

¶ 37     The summary judgment is reversed, and the case is remanded

for further proceedings on Blakesley's negligence claim.[9]

---

[8] Based on the record before us, we cannot determine whether
Blakesley was following the BNSF flagger's instruction when he was
struck by the excavator.  First, it is not clear from the record when
the BNSF flagger's instruction permitted Blakesley to remove his
vest.  Second, even if, as the district court concluded, Blakesley was
only permitted to remove his vest while he was "welding," it is not
clear whether "welding" would include positioning the pipe so that it
could be cut or other tasks incidental to welding.

[9] At the conclusion of oral argument, Blakesley's counsel asked, for
the first time, that we assign a different district court judge on
remand.  We reject this baseless and procedurally improper request
for multiple reasons.  Blakesley has made no proper motion for a
change in judge, he did not raise this request in his briefings, and
he has cited *nothing* besides the district court's adverse rulings
against him that would support the assignment of a different judge.

JUDGE DUNN and JUDGE CASEBOLT concur.

---

It is well established law that adverse rulings alone do not constitute grounds to replace a judge. *In re Marriage of McSoud*, 131 P.3d 1208, 1223 (Colo. App. 2006).