Ola **HALLIBURTON, Virgil Halliburton, and Eddie Owens,**
Plaintiffs–Appellees,

and

**Glen Falls Insurance Company,**
Plaintiff–Intervenor–Appellee,

v.

**PUBLIC SERVICE COMPANY OF COLORADO, a Colorado corporation, Defendant–Appellant.**

No. 88CA1368.

Colorado Court of Appeals,
Div. V.

June 28, 1990.

Rehearing Denied July 26, 1990.

Certiorari Denied Jan. 28, 1991.

Wilcox & Ogden, Ralph Ogden, Denver, for plaintiffs-appellees.

Walberg, Dagner & Loyd, P.C., Wendelyn K. Walberg, Barbara C. Loyd, Englewood, for plaintiff-intervenor-appellee.

Kelly, Stansfield & O'Donnell, Timothy J. Flanagan, Kevin W. Hecht, Denver, for defendant-appellant.

Opinion by Judge DUBOFSKY.

Defendant, Public Service Company of Colorado, appeals the judgment awarding damages to plaintiffs, Ola Halliburton, Virgil Halliburton, Eddie Owens, and Glen Falls Insurance Company, based on defendant's negligence. We affirm.

Plaintiffs brought this negligence action against defendant, a supplier of natural gas, for an explosion which occurred on February 2, 1985, at the Halliburton home in Denver, Colorado. Ola Halliburton and Eddie Owens were injured in the explosion. Ola Halliburton's husband, Clarence Halliburton, died as a result of the explosion. Virgil Halliburton lost property which was stored at the house, and Glen Falls Insurance Company, the casualty insurer of the premises, intervened in the action.

The cause of the explosion was a leaking flexible tube which connected the gas piping in the interior of the home to the gas range in the kitchen. The chemical ethyl mercaptan, which is added to natural gas to give it an odor, caused a gradual deterioration of the connector tube which in turn caused it to leak gas. The identity of the manufacturer of the connector tube is unknown.

As early as 1978, defendant knew that a large number of connector tubes of the type used in the Halliburton home were failing because of the interaction between its gas and the tubes. The evidence suggests that as many as 45,000 customers in the Denver area use this type of connector and were, therefore, at risk for a gas leak and resulting explosion.

In 1980 defendant started a campaign to warn its customers of the risks presented by these failing connectors. In February 1980, the defendant held a news conference during which it discussed its campaign to check customer owned connectors and to disseminate information about this hazard. Defendant also made several radio and television announcements and sent periodic messages in its newsletter with the customers' monthly billing. At trial, however, there was no evidence that plaintiffs had received actual notice of the problems with the connectors.

Prior to the explosion, defendants' servicemen went to the Halliburton's home on several occasions, including March 28, 1979, and March 12, 1982, to correct problems with the hot water tank and furnace. An internal memorandum written by a supervisor for defendant recognized the hazard and instructed servicemen to inspect all gas appliances for the tubes and to provide warning information, but the servicemen did not inspect either the stove or the connector tube.

Plaintiffs claim that defendant was negligent when it failed during its two service calls to inspect, replace, or otherwise deal with the connector tube. Plaintiff also claimed defendant was negligent in not *adequately* warning of the dangers of the connectors.

Defendant argues that the trial court erred in finding that defendant had a duty to plaintiffs in regard to the hazard presented by the connector. Defendant also appeals other alleged errors at trial.

### I.

Defendant first argues the trial court erred in finding that defendant owed plaintiffs a legal duty to check the connector tube and, if necessary, to take corrective action. We disagree.

Natural gas is considered a product of the selling and distributing company and, because of the recognized hazards connected with the use of natural gas, a

higher duty of care is owed by manufacturers and distributors of natural gas. *See Blueflame Gas, Inc. v. Van Hoose,* 679 P.2d 579 (Colo.1984); *see also Smith v. Home Light & Power Co.,* 734 P.2d 1051 (Colo.1987) (electricity while used in the home is a product).

In addition to supplying natural gas, defendant also maintains and repairs certain items which are involved in the use of its gas. A service company's duty for providing upkeep and repair services may go beyond the mere replacement or repair of a part. Depending upon the particular factual circumstances, there can be a duty to use reasonable skill in inspecting or repairing the item involved with the use and delivery of a product, *i.e.,* natural gas. *See Metropolitan Gas Repair Service, Inc. v. Kulik,* 621 P.2d 313 (Colo.1980) (fn. 6).

In enunciating some of the important factors to be considered in determining if a duty exists, the court in *Smith v. City & County of Denver,* 726 P.2d 1125 (Colo. 1986) stated:

"Whether the law should impose a duty requires consideration of many factors including, for example, the risk involved, the foreseeability and likelihood of injury as weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against injury or harm, and the consequences of placing the burden upon the actor."

Here, several reasons lead us to impose a duty upon defendant to inspect the Halliburton connector tube. These factors include: (a) the relatively insignificant amount of time and expense that would have been required of defendant to evaluate the connector tube and to take corrective action; (b) the two service calls at the Halliburton home after the company knew of a substantial hazard affecting approximately 45,000 homes in the Denver area; (c) the likelihood of the tube leaking and ultimately causing an explosion unless corrective action were taken; and (d) defendant's expertise in dealing with such problems and the legitimate expectation of its customers that defendant would undertake reasonable efforts to prevent injury or damage from hazards associated with its product.

The most compelling reason, however, for imposing a duty upon defendant is that its product, natural gas, which contained the corrosive ethyl mercaptan, was a substantial factor in *causing* the deterioration of the connector tube. *See University of Denver v. Whitlock,* 744 P.2d 54 (Colo. 1987).

When a party can reasonably foresee that its product will be used as an integral component of a defective and unreasonably dangerous product, there is a duty upon that party to undertake corrective action to alleviate, if possible, the hazard. *See Union Supply Co. v. Pust,* 196 Colo. 162, 583 P.2d 276 (1978); *see also United States Fidelity & Guaranty Co. v. Salida Gas Co.,* 793 P.2d 602 (Colo.App.1989).

Therefore, primarily because of the service component of defendant's business and the involvement of defendant's gas product in the deterioration of the tube, we conclude that the trial court properly determined there was a duty upon defendant to use reasonable care in dealing with the connecting tube hazard.

## II.

■ Defendant next argues that a negligence action for failure to warn cannot be maintained because the duty to warn is based on a strict liability claim under Restatement (Second) of Torts § 402A (1965). Plaintiffs admit they did not plead a Restatement strict liability claim but argue, however, that they can proceed with a negligence claim based on general products liability law. We agree with plaintiff.

■ The arrival of strict liability law did not abrogate the right of an injured party also to proceed on a negligence claim. *See Halter v. Waco Scaffolding & Equipment Co.,* 797 P.2d 790 (Colo.App.1990); *Bailey v. Montgomery Ward & Co.,* 635 P.2d 899 (Colo.App.1981); *see also* T. Travers, *American Law of Products Liability* § 8:13 (3rd ed. 1988). In addition to the duty to warn recognized under strict liability law, the principles of general product

liability law impose a duty on the manufacturer of a product to act reasonably in the design, manufacture, and sale of the product. This duty includes providing adequate warnings.

The duty to warn is derived from a manufacturer's broader duty to act appropriately in the manufacture, distribution, and sale of its goods. Typically, a warning is required when the manufacturer has not designed the product so that a given hazard is eliminated. *See Union Supply Co. v. Pust, supra; see also Voss v. Black & Decker Manufacturing Co.*, 59 N.Y.2d 102, 463 N.Y.S.2d 398, 450 N.E.2d 204 (1983).

We conclude that the reasons which impose a duty to warn under Restatement (Second) of Torts § 402A, also exist where the claim is based on negligence and, generally, the law applicable to warnings under § 402A are instructive in negligence cases as well.

In *Downing v. Overhead Door Corp.*, 707 P.2d 1027 (Colo.App.1985), this court noted:

> "The difference between negligence and strict liability is the focus of the trier of fact. Under a negligence theory, the reasonableness of the manufacturer's conduct must be determined. Under a strict liability theory, the determination is whether the product is defective, or, if not defective, unreasonably unsafe, and whether, under an objective standard, after weighing the relevant costs and benefits, a warning was required."

Therefore, we conclude that if, as under the circumstances here, a supplier of natural gas knows its customers' appliances or connectors are leaking gas, then that supplier has a duty to take corrective action which includes, *inter alia*, adequately warning of the danger. *See Van Den Hul v. Baltic Farmers Elevator Co.*, 716 F.2d 504 (8th Cir.1983); *see also Claxton Poultry Co. v. City of Claxton*, 155 Ga.App. 308, 271 S.E.2d 227 (1980); *Denniston v. Skelly Oil Co.*, 47 Ill.App.3d 1054, 6 Ill. Dec. 77, 362 N.E.2d 712 (1977).

### III.

■ Defendant asserts the trial court committed reversible error when it refused to provide a court reporter to record voir dire. We disagree.

Here, voir dire began without a court reporter being present. At that time neither party either requested a court reporter nor objected to the absence of one. During voir dire, defense counsel objected to one of plaintiff's counsel's questions and then, for the first time, requested of the trial court that a court reporter be provided for the remainder of voir dire. The trial court denied defendant's request. Defendant makes several claims concerning improper questioning by plaintiff's counsel of prospective jurors. The record before us, however, is insufficient to sustain defendant's allegations.

■ Generally, the request by a party to record any trial proceeding should be granted. *See Jones v. District Court*, 780 P.2d 526 (Colo.1989). However, if the request is denied, the party prosecuting an appeal remains obligated to take all steps necessary under the appellate rules to obtain the necessary record for review. *Continental Air Lines, Inc. v. City & County of Denver*, 129 Colo. 1, 266 P.2d 400 (1954).

C.A.R. 10(c) and (e) require, in circumstances in which a stenographic transcript is not available, that the appellant prepare a statement from his recollection that is first submitted to the trial court for approval. *Continental Air Lines, Inc. v. City & County of Denver, supra*. If it is necessary to add to the record parts of the evidence or proceedings that were not recorded by the reporter, the provisions of C.A.R. 10(c) must be followed. *See Herndon v. City of Massillon*, 638 F.2d 963 (6th Cir.1981); *see also* 9 *Moore's Federal Practice* 210.06[1] (2d ed. 1990).

The parties dispute what the statements of the jurors were and the basis for the court's ruling. Thus, since there was no compliance with C.A.R. 10, we do not have an adequate basis to evaluate the parties' claims and the trial court's ruling. *See Almarez v. Carpenter*, 173 Colo. 284, 477 P.2d 792 (1970); *see also Herndon v. City*

*of Massillon, supra.* And, absent undertaking that effort required by C.A.R. 10(c) immediately after trial, defendant cannot now complain of a lack of transcript or an inadequate record. *Almarez v. Carpenter, supra.*

## IV.

■ Defendant next argues that plaintiff's violation of the trial court's rulings on its motion in limine requires reversal. The alleged violations consist of references made by witnesses regarding Clarence Halliburton's condition for the 45 days after the explosion and before his death and the reference in closing argument by plaintiff's counsel of the effect of a settlement reached by the plaintiffs with the seller of the stove. We perceive no error.

Defendant, through its motion in limine, obtained a ruling precluding testimony concerning Clarence Halliburton's pain and suffering because a wrongful death claim, as a matter of law, is limited to recovery for pecuniary loss. *See Millican v. Wolfe,* 701 P.2d 107 (Colo.App.1985). The wrongful death claim, however, was later dismissed by plaintiff.

Defendant argues it was error to admit into evidence statements concerning Clarence Halliburton's stay at the hospital as it was contrary to the in limine motion. However, as the wrongful death claim had been dismissed, the purpose of the trial court's order excluding the evidence became irrelevant.

■ Furthermore, for a violation of an in limine order to serve as a basis for a new trial, the order must be clearly violated and the violation sufficiently prejudicial as to require reversal. *See Reidelberger v. Highland Body Shop, Inc.,* 79 Ill.App.3d 1138, 35 Ill.Dec. 413, 399 N.E.2d 247 (1979).

Here, since the wrongful death claim in regard to Charles Halliburton was withdrawn, defendants are unable to show they were prejudiced by this testimony. *See* C.R.C.P. 61.

■ Plaintiff's counsel's comments regarding settlement with the seller of the stove were made in response to defendant's closing argument concerning the responsibility of that seller. Even if we assume, *arguendo,* that the mention of the effect of the settlement with the seller of the stove was improper, defendant opened the door on this subject by its argument, and it was permissible for plaintiff's counsel to respond. *See Uptain v. Huntington Lab, Inc.,* 685 P.2d 218 (Colo.App.1984), *aff'd,* 723 P.2d 1322 (Colo.1986).

## V.

■ Defendant argues the trial court erred in admitting a document authored by an employee of defendant. We disagree.

The trial court admitted into evidence a document prepared by defendant's employee service manager. The document, dated February 28, 1980, recited a number of connector tube problems and directed servicemen to check the connectors when making service calls and to provide warning information to defendant's customers about these hazards.

A statement by an employee made during the term of his employment concerning a subject matter within the scope of employment is admissible. CRE 801(d)(2)(D); *see generally State Compensation Insurance Fund v. City of Colorado Springs,* 43 Colo.App. 112, 602 P.2d 881 (1979).

Plaintiff's negligence claim was based on defendant's negligent service calls as well as the failure of defendant to warn homeowners adequately about the deteriorating connectors. This document demonstrated that defendant had notice of the problem and that the connectors could be readily inspected. The document was thus properly admitted as an admission of a party. *State Compensation Insurance Fund v. City of Colorado Springs, supra.* Additionally, the document was relevant to defendant's knowledge. *Bunnett v. Smallwood,* 768 P.2d 736 (Colo.App.1988).

## VI.

■ Defendant argues the trial court erred in failing to submit one jury form rather than several which would compare the negligence of defendant with the three

individual plaintffs and plaintiff-intervenor. We disagree.

Here, defendant, in conjunction with plaintiff, agreed on the verdict forms and presented them to the court. Since defendant failed to object at trial to the verdict forms and raises the issue for the first time on appeal, we will not consider defendant's argument on this issue. *See Blades v. DaFoe*, 704 P.2d 317 (Colo.1985).

Additionally, in response to defendant's argument concerning an inaccurate determination of the comparative percentages of negligence of the parties, we note that defendant failed to take into account the impact of comparing the total negligence of the plaintiffs on each verdict form with the total negligence of the defendant on each verdict form. Furthermore, since the negligence of Glen Falls Insurance Co. is derivative of Ola and Clarence Halliburton's negligence, it should not be determined separately since the jury already made allowance for it in the special verdict forms. *See National Farmers Union Property & Casualty Co. v. Frackelton*, 662 P.2d 1056 (Colo.1983).

### VII.

#### A.

Defendant argues it was error for the trial court not to apply § 13–21–111.5, C.R.S. (1987 Repl.Vol. 6A) to plaintiff's claims. We disagree.

Defendant maintains § 13–21–111.5 applies to plaintiff's actions. Defendant admits that under Colo.Sess.Laws 1986, ch. 108, at 682, § 13–21–111.5 applies only to actions commenced after July 1, 1986, and it admits that plaintiffs' action was filed before that date. However, it argues that defendant should have been allowed to apply the designation of non-party provision of § 13–21–111.5(3)(b), C.R.S. (1987 Repl. Vol. 6A) to the new claims. We disagree.

■ To resolve this issue we need not determine whether § 13–21–111.5 applies to actions which accrued before July 1, 1986, to those which were filed thereafter, or to those which were "commenced" in some other way. Whenever an amended pleading or complaint arises out of the conduct, transaction, or occurrence set forth in the original pleading, the amendment relates back to the date of the original pleading. C.R.C.P. 15(c); *Roper v. Spring Lake Development Co.*, 789 P.2d 483 (Colo.App. 1990). Here, the lawsuit was filed before July 1, 1986, and thus, the amended pleadings relate back to the filing date.

#### B.

■ Defendant next argues the court erred in not applying § 13–21–111.5(3)(b) to Glen Falls Insurance Co. We disagree.

Glen Falls Insurance Co. moved to intervene on September 30, 1987. Glen Falls Insurance Co., however, is interested in the litigation only as subrogee of the policy owners' claims which were already presented, and it was, therefore, entitled to the benefits of the relation-back doctrine. *See Travelers Insurance Co. v. Gasper*, 630 P.2d 97 (Colo.App.1981).

We conclude the other issues raised by defendant are without merit.

Judgment is affirmed.

DAVIDSON and RULAND, JJ., concur.