Opinions of the Colorado Supreme Court are available to the public and can be accessed through the Judicial Branch's homepage at http://www.courts.state.co.us. Opinions are also posted on the Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
June 26, 2017

**2017 CO 79**

**No. 16SC388, <u>N.M. v. Trujillo</u> — Negligence — Duty of Care — Nonfeasance — Special Relationships — C.R.C.P. 12(b)(5).**

This case requires the supreme court to determine whether the respondent, a dog owner, owed a duty of care to the petitioner, a child who became frightened when the respondent's dogs rushed at respondent's front-yard fence and who, although not touched by the fenced-in dogs, ran into the street and was struck and injured by a passing van.

In the circumstances presented here, the court determines that, as a matter of law, the respondent did not owe the petitioner a duty of care. Because the petitioner's negligence claim against the respondent was predicated on alleged nonfeasance, or failure to act, and because the case is distinguishable from cases in which a dangerous or vicious animal attacks and directly injures someone, the petitioner was required to plead a special relationship between himself and the respondent in order to establish the duty of care necessary to support his negligence claim. The petitioner did not, however, plead such a special relationship. Accordingly, the court concludes that the respondent owed no duty of care to the petitioner and that therefore the district court

properly dismissed the petitioner's negligence claim against the respondent. The supreme court thus affirms the judgment of the court of appeals.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2017 CO 79

### Supreme Court Case No. 16SC388
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 14CA2494

### Petitioners:

N.M., a minor child, by and through Maria Lopez, his mother and next friend, and Maria Lopez, individually,

v.

### Respondent:

Alexander S. Trujillo.

### Judgment Affirmed
*en banc*
June 26, 2017

**Attorneys for Petitioners:**
Chalat Hatten & Banker, PC
James H. Chalat
Russell R. Hatten
  *Denver, Colorado*

**Attorneys for Respondent:**
Zupkus & Angell, P.C.
Kristi A. Lush
Erica O. Payne
  *Denver, Colorado*

**Attorneys for Amicus Curiae Colorado Civil Justice League:**
Taylor Anderson LLP
Lee Mickus
Margaret Boehmer
  *Denver, Colorado*

**Attorneys for Amicus Curiae Colorado Defense Lawyers Association:**
Montgomery Little & Soran, PC
Echo D. Ryan
William B. Ross
  *Greenwood Village, Colorado*

**JUSTICE GABRIEL** delivered the Opinion of the Court.
**JUSTICE MÁRQUEZ** does not participate.

¶1     While walking past respondent Alexander Trujillo's home on his way to the playground at Dupont Elementary School, petitioner N.M. became frightened when Trujillo's two pit bulls rushed at the front-yard fence. Although the dogs did not get out of the yard or touch N.M., N.M., in his fright, ran across the street and was struck by a passing van, which seriously injured him.

¶2     N.M., by and through his parent and legal guardian, Maria Lopez, and Lopez, in her individual capacity (collectively, "N.M."), sued Trujillo for, as pertinent here, negligence. Trujillo moved to dismiss that claim, contending that N.M. had not sufficiently pleaded the requisite element of duty. The district court agreed and dismissed the case, and in a split, published decision, a division of the court of appeals affirmed. Lopez v. Trujillo, 2016 COA 53, ¶¶ 2, 41, ___ P.3d ___.

¶3     We granted certiorari to decide whether, in the circumstances presented here, Trujillo owed N.M. a duty of care.[1] We conclude that he did not. Because N.M.'s claim against Trujillo is predicated on Trujillo's alleged nonfeasance, or failure to act, and because this case is distinguishable from cases in which a dangerous or vicious animal attacks and directly injures someone, N.M. was required to plead a special relationship between himself and Trujillo in order to establish the duty of care necessary to support a negligence claim. N.M. concedes, however, that he did not plead such a special

---

[1] Specifically, we granted certiorari to review the following issue:

> Whether the court of appeals erred by holding that a dog owner does not owe a duty of care to a child pedestrian who, frightened by the owner's dogs, ran into the street and sustained injuries from a passing vehicle.

relationship. Accordingly, on the facts now before us, we conclude that Trujillo owed no duty of care to N.M. and that therefore the district court properly dismissed N.M.'s negligence claim against Trujillo.

## I. Facts and Procedural History

¶4    In his amended complaint, N.M. alleged the following facts:

¶5    One day in August 2013, eight-year-old N.M. and his cousin were walking to the playground at Dupont Elementary School. As the pair approached Trujillo's home, which was directly across the street from the playground, two "large, vicious, and loud-barking" pit bulls in Trujillo's front yard rushed at the boys without provocation and "jumped on and rattled" the four-foot-high chain link fence that abutted the sidewalk on which the boys were walking.

¶6    Although neither dog escaped Trujillo's yard or touched the boys, the dogs startled and frightened them. Thinking that the dogs were going to jump over the fence and bite them, the boys ran into the adjacent street where N.M. was hit by a passing van. He suffered severe injuries and was hospitalized for twenty-four days.

¶7    Thereafter, N.M. sued the van driver and the driver's employer, alleging negligence, negligence per se, and respondeat superior.[2] N.M. subsequently moved to amend his complaint to add claims against Trujillo, and the district court granted that motion.

¶8    As pertinent here, the amended complaint alleged that at the time of the incident at issue, Trujillo had actual knowledge of previous incidents in which his two pit bulls

---

[2] N.M. ultimately settled these claims, and they are not at issue here.

had frightened others by rushing the fence, barking loudly in a threatening manner, and jumping up on and rattling the fence. The complaint did not, however, allege any special relationship between Trujillo and N.M.

¶9 Based on the foregoing allegations, N.M. asserted, among other claims not presently before us, a negligence claim against Trujillo. In this claim, he alleged that Trujillo (1) had a duty to exercise reasonable care to control his vicious/dangerous pit bulls so as not to frighten, threaten, or harm others, or to cause others to harm themselves attempting to flee from the charging pit bulls; (2) knew or should have known that children walked along the sidewalk in front of his house to access the playground across the street; (3) breached his duty to exercise reasonable care to prevent his dogs from threatening and frightening pedestrians who were walking in front of his house; and (4) caused N.M. serious bodily injuries, damages, and losses.

¶10 In response to N.M.'s negligence claim, Trujillo filed a C.R.C.P. 12(b)(5) motion to dismiss. In this motion, Trujillo argued, among other things, that he owed no duty of care to N.M.

¶11 The district court ultimately granted Trujillo's motion as to N.M.'s negligence claim. In so ruling, the court concluded that, as a matter of law, Trujillo owed N.M. no duty because Trujillo "could not reasonably foresee that his dogs' barking or lunging at his fence would cause [N.M.] to be so frightened that he would run into the street and get hit by a car."

¶12 N.M. appealed, and in a split, published opinion, a division of the court of appeals affirmed. Lopez, ¶¶ 2, 41.

5

¶13     As pertinent here, the division majority evaluated the factors set forth in <u>Taco Bell, Inc. v. Lannon</u>, 744 P.2d 43, 46 (Colo. 1987), to guide courts in deciding whether to impose a duty of care and concluded that Trujillo did not owe N.M. such a duty. <u>Lopez</u>, ¶¶ 15–31.  In reaching this conclusion, the majority first noted that the dogs were fenced inside Trujillo's yard by a four-foot-high chain-link fence and that the amended complaint did not allege that either dog had jumped over the fence or had physically harmed or touched N.M.  <u>Id.</u> at ¶ 16.  The majority further observed that although N.M.'s injuries were tragic, their likelihood was not foreseeable.  <u>Id.</u> at ¶ 17.  In addition, the majority stated that the social utility of Trujillo's conduct outweighed the foreseeability and likelihood of injury.  <u>Id.</u> at ¶ 21.  Finally, the majority opined that the magnitude of the burden on dog owners to guard against injury was high, as were the costs of placing any additional burdens on the owners, and that the consequences of imposing such additional burdens would be unreasonable.  <u>Id.</u> at ¶ 22.  Specifically, dog owners would effectively be required to keep dogs in a place where they could neither be seen nor heard by members of the public passing by, and additional measures would not alleviate the possibility that a passerby would be frightened by a suddenly barking dog.  <u>Id.</u>

¶14     Accordingly, the division concluded that the district court had properly ruled that Trujillo did not owe N.M. a duty of care.  <u>Id.</u> at ¶ 31.

¶15     Judge Vogt dissented.  Although she agreed that the case turned on the application of the <u>Taco Bell</u> factors, her assessment of those factors differed from that of the majority.  <u>See id.</u> at ¶¶ 43–51.  Specifically, in Judge Vogt's view, a dog owner may

6

be liable for harm caused by the dog to another person even if the dog does not physically contact the other person. Id. at ¶ 44. In addition, Judge Vogt deemed it "eminently foreseeable" that a child in N.M.'s position would (1) be frightened when two "large, vicious, loud-barking pit bulls" rushed and jumped on the fence and (2) run into the street to get away from them. Id. at ¶ 46. Given the general recognition of the limitations on the right to keep vicious dogs, Judge Vogt further believed that the social utility of Trujillo's ownership of the dogs at issue did not outweigh the foreseeability of injury to others by those dogs. Id. at ¶ 50. Finally, Judge Vogt opined that the record at the motion to dismiss stage did not support the majority's conclusions as to the magnitude and reasonableness of the burden that would be placed on dog owners to guard against injury or harm caused by their dogs. Id. at ¶ 51. Judge Vogt would therefore have allowed N.M.'s negligence claim to go to the jury. Id. at ¶ 53.

¶16    N.M. subsequently sought, and we granted, certiorari.

## II. Analysis

¶17    We begin by articulating the proper standard of review for the dismissal of claims under C.R.C.P. 12(b)(5). We then address the applicable duty of care in the context of nonfeasance claims such as that present here. Finally, we apply the pertinent standards to the facts of this case and conclude that, as a matter of law, Trujillo owed no duty of care to N.M.

## A. Standard of Review

¶18    We review de novo a district court's dismissal for failure to state a claim under C.R.C.P. 12(b)(5), and we apply the same standards as the district court. Colo. Ethics

7

Watch v. Senate Majority Fund, LLC, 2012 CO 12, ¶ 16, 269 P.3d 1248, 1253. Accordingly, we accept all allegations in the complaint as true, and we view them in the light most favorable to the non-moving party. Id. Dismissal under C.R.C.P. 12(b)(5) is proper only when the facts alleged in the complaint cannot, as a matter of law, support the claim for relief. Id.

¶19 At the time both the district court and the division decided this case, Colorado courts applied the standard set forth in Conley v. Gibson, 355 U.S. 41, 45–46 (1957), abrogated by Bell Atl. Corp. v. Twombly, 550 U.S. 544, 562–63 (2007), for assessing motions to dismiss for failure to state a claim. Under this standard, a complaint could not be dismissed for failure to state a claim unless it appeared beyond doubt that the plaintiff could prove no set of facts in support of the claim that would entitle the plaintiff to relief. Id.

¶20 In Warne v. Hall, 2016 CO 50, ¶ 24, 373 P.3d 588, 595, however, we chose to follow more recent federal precedent, and we adopted a "plausibility" standard for assessing C.R.C.P. 12(b)(5) motions. Under this standard, to survive a motion to dismiss for failure to state a claim, a plaintiff must allege a plausible claim for relief. Id. at ¶ 9, 373 P.3d at 591.

¶21 The parties here dispute which standard—Conley or Warne—applies to N.M.'s amended complaint, which was filed before we decided Warne. We need not resolve this dispute, however, because, for the reasons set forth below, under either standard, N.M.'s amended complaint does not sufficiently state a viable negligence claim on which relief could be granted.

8

¶22    Accordingly, we now turn to the applicable standard of care.

## B.  Duty of Care

¶23    To recover on a negligence claim, a plaintiff must establish that (1) the defendant owed the plaintiff a legal duty of care; (2) the defendant breached that duty; (3) the plaintiff was injured; and (4) the defendant's breach caused that injury.  Vigil v. Franklin, 103 P.3d 322, 325 (Colo. 2004).

¶24    Whether a defendant owes a duty to a plaintiff is the threshold element because absent a duty, the question of whether the other elements can be satisfied does not arise.  See id.  Whether a duty exists presents a question of law to be determined by the court.  Id.  This question requires the court to determine whether the plaintiff's interest that has been infringed by the defendant's conduct is entitled to legal protection.  See Metro. Gas Repair Serv., Inc. v. Kulik, 621 P.2d 313, 317 (Colo. 1980).

¶25    In making the foregoing determination, we have recognized a distinction between claims based on a defendant's failure to act (i.e., nonfeasance) and claims based on a defendant's active misconduct (i.e., misfeasance).  See Univ. of Denver v. Whitlock, 744 P.2d 54, 57 (Colo. 1987) ("In determining whether a defendant owes a duty to a particular plaintiff, the law has long recognized a distinction between action and failure to act—'that is to say, between active misconduct working positive injury to others [misfeasance] and passive inaction or a failure to take steps to protect them from harm [nonfeasance].'") (quoting W. Page Keeton, Dan B. Dobbs, Robert E. Keeton & David G. Owen, Prosser & Keeton on the Law of Torts § 56, at 373 (5th ed. 1984)).  One reason for this distinction lies in the fact that an actor's misfeasance has created a new risk of

9

harm, whereas by nonfeasance, the actor has simply preserved the status quo. See id.; accord Smit v. Anderson, 72 P.3d 369, 372 (Colo. App. 2002).

¶26 "In nonfeasance cases the existence of a duty has been recognized only during the last century in situations involving a limited group of special relationships between parties." Whitlock, 744 P.2d at 58. Such relationships are predicated on a "definite relation" between the parties that is of such a character that social policy justifies the imposition of a duty to act. Id. A duty to act might arise, for example, in a situation in which two parties are in a relationship of dependence or mutual dependence. Id.

¶27 To date, we have recognized only the following types of special relationships: (1) common carrier/passenger, (2) innkeeper/guest, (3) possessor of land/invited entrant, (4) employer/employee, (5) parent/child, and (6) hospital/patient. Id.; see also Westin Operator, LLC v. Groh, 2015 CO 25, ¶¶ 28, 32, 347 P.3d 606, 612–13 (concluding that by virtue of the innkeeper/guest special relationship, a hotel has a legal duty to exercise reasonable care toward its guests, and noting that "when a special relationship exists, liability can result both from misfeasance (active misconduct causing a positive injury to others) or nonfeasance (passive inaction or a failure to protect from harm)").

¶28 Applying the foregoing principles, we have generally declined to impose a duty of care in cases involving a defendant's nonfeasance, absent a special relationship between the parties.

¶29 For example, in Whitlock, 744 P.2d at 55, the plaintiff brought a negligence claim against the University of Denver for injuries he suffered in a trampoline accident at a fraternity house. The plaintiff contended that the University owed him a duty to ensure

10

that the fraternity's trampoline either (1) would be used only under supervised conditions or (2) would be removed from the front lawn of the fraternity house. Id. at 59.

¶30 We began our analysis by observing that the plaintiff's allegations involved a negligent failure to act, rather than negligent action. Id. Accordingly, we stated that any duty that the defendant owed to the plaintiff would need to be grounded on a special relationship between the University and the plaintiff. Id.

¶31 We then evaluated two possible sources of a special relationship from which a duty could have arisen in that case: (1) the plaintiff's status as a student of the University and (2) the lease between the University and the fraternity of which the plaintiff was a member. Id. at 59–62. We determined, however, that neither of these relationships was one of dependence that could give rise to the requisite special relationship. Id. at 61–62. Accordingly, we concluded that the University owed no duty to the plaintiff to eliminate the private use of trampolines on campus, to supervise that use, or to protect the plaintiff from the well-known dangers of such use. Id. at 62.

¶32 Similarly, in Bittle v. Brunetti, 750 P.2d 49, 50 (Colo. 1988), the plaintiff brought a negligence claim against commercial property owners alleging that the owners' failure to shovel the sidewalk abutting their property caused him to fall and injure himself. Addressing the question of whether the owners owed the plaintiff a duty of care in such circumstances, we explained that "absent a special relationship between a plaintiff and a defendant, we will not impose a duty on the defendant to take affirmative measures to prevent a harm to the plaintiff." Id. at 53. On the facts then before us, we

11

determined that no special relationship existed between the parties at issue, and therefore, we held that "owners of property have no common law duty to remove naturally accumulating snow and ice from the public sidewalks abutting their property." Id. at 53–55. In reaching this conclusion, we observed that nonliability was "consistent with our reluctance to impose liability based on nonfeasance." Id. at 53.

¶33 With this legal framework in mind, we turn to the facts in the present case.

## C. Application

¶34 At oral argument, N.M.'s counsel conceded that N.M.'s amended complaint asserted a claim of nonfeasance. Specifically, as pertinent here, the amended complaint alleged negligence based on Trujillo's purported breach of his duty "to exercise reasonable care to prevent his dogs from threatening and frightening pedestrians walking in front of his house."

¶35 N.M., however, did not allege any special relationship between himself and Trujillo, and we perceive nothing in the amended complaint, even construed liberally, that would support a finding of any of the types of special relationships that we have recognized to date. See Whitlock, 744 P.2d at 58. Nor has N.M. articulated a relationship of dependence or mutual dependence between himself and Trujillo that might support the recognition of a new type of special relationship, not previously recognized by our case law. See id. at 58–62.

¶36 Absent such a special relationship, we conclude, as a matter of law and in accordance with the settled precedent discussed above, that Trujillo did not owe N.M. a duty of care.

12

¶37 We are not persuaded otherwise by N.M.'s contention at oral argument that no special relationship is required here. In support of this contention, N.M. cited several cases involving purported negligence claims against pet owners, and he argued that these cases (1) provide the proper framework for evaluating the duty of care in a case like this and (2) do not require a special relationship between the parties. See, e.g., Barger v. Jimerson, 276 P.2d 744 (Colo. 1954); Dubois v. Myers, 684 P.2d 940 (Colo. App. 1984); Melsheimer v. Sullivan, 27 P. 17 (Colo. App. 1891).

¶38 Although as N.M. asserts, the cases on which he relies suggest that a plaintiff can assert a negligence claim, notwithstanding the absence of a special relationship, based on an injury caused by a domestic animal with vicious or dangerous tendencies, for three reasons, we conclude that these cases do not apply here.

¶39 First, these cases appear to be premised on a theory of strict liability arising from injuries caused by dangerous or vicious animals. See CJI-Civ. 4th 13:1 note 4 (noting that Barger and Melsheimer "hold, in effect, that if a person who owns or keeps an animal knows or is on notice that the particular animal is dangerous or destructive, then that person is strictly liable for injuries proximately caused by a failure to keep the animal secured"); see also Swerdfeger v. Krueger, 358 P.2d 479, 481–82 (Colo. 1960) (noting that liability in Barger and Melsheimer was premised on the facts that the dog in Melsheimer was a watchdog and was trained to attack trespassers and that the dog in Barger had broken from its restraint and attacked the plaintiff).

¶40 "Strict liability is most commonly applied in matters of product liability, ultrahazardous activities, and trespass that, by their nature, may cause harm to others

13

regardless of the exercise of due care." Minto v. Sprague, 124 P.3d 881, 884 (Colo. App. 2005). In such cases, the focus is on the product or instrumentality at issue, rather than on the conduct of either the plaintiff or the defendant. Boles v. Sun Ergoline, Inc., 223 P.3d 724, 727 (Colo. 2010).

¶41 Here, N.M. has not argued that the negligence claim now before us is premised on a theory of strict liability. For that reason alone, the cases on which he relies are inapposite.

¶42 Second, and consistent with the cited cases' focus on the animals at issue rather than on the conduct of the defendants, none of those cases discussed the respective defendants' duties to the plaintiffs, which is the issue now before us. For this reason as well, the cases on which N.M. relies are not helpful here.

¶43 Third, the cases on which N.M. relies all involve situations in which the animal itself directly injured the plaintiff. For example, in Melsheimer, 27 P. at 22–23, the plaintiff alleged negligence based on injuries he received from being bitten and otherwise injured by the defendant's dog, which was a watchdog that had been trained to attack trespassers. Similarly, in Barger, 276 P.2d at 460–61, the defendants' dog had broken from its restraints and was running loose when it attacked the plaintiff and grabbed her left ankle. And in Dubois, 684 P.2d at 941, the negligence action at issue arose from injuries sustained by the plaintiff when the defendant's horse kicked her.

¶44 Here, in contrast, Trujillo's dogs did not escape their enclosure and never touched N.M. Thus, even if the cases on which N.M. relies could, in certain circumstances, support a viable negligence claim, notwithstanding the absence of a

14

special relationship between the parties, this is not such a case, and we perceive no reason to extend the reasoning of the cited cases to a case like the present one. Indeed, were we to do so, it would be difficult to discern the limits of such a rule, and the threshold element of duty would be rendered virtually meaningless in negligence cases involving animals.

¶45    CJI-Civ. 4th 13:1 and Fishman v. Kotts, 179 P.3d 232 (Colo. App. 2007), on which N.M. also relies, are not to the contrary. Indeed, these authorities support our conclusion here.

¶46    CJI-Civ. 4th 13:1 is a pattern jury instruction entitled, "Domestic Animals— Dangerous or Vicious Tendencies—Elements of Liability." Like the above-referenced cases on which N.M. relies, this instruction does not address the issue of duty. Nor does it support a negligence claim in a case like the present one absent the showing of a duty. To the contrary, note 1 to that pattern instruction specifically states, "This instruction should be given only if the court has determined that the defendant owed a duty of care to the plaintiff to protect against the alleged injury." For the reasons set forth above, we do not believe that N.M. has pleaded sufficient facts to establish the requisite duty.

¶47    Similarly, in Fishman, 179 P.3d at 235–36, the division considered whether the trial court had abused its discretion in instructing the jury, pursuant to CJI-Civ. 4th 13:1, on the liability of dog owners. In that case, a horse rider was injured when a dog got underneath her horse and nipped and bit at the horse's hooves, causing the horse to rear up and ultimately fall on the rider. Id. at 234. The division concluded that the trial

15

court did not abuse its discretion in giving the instruction, id. at 236, but the division did not address the question of whether and when a duty arises in a case like the present one.  Accordingly, that case also does not assist N.M. here.

¶48    Finally, we are unpersuaded by N.M.'s contention that we should allow this case to proceed because N.M. has not yet had the benefit of discovery and discovery might uncover facts that would allow him to plead a misfeasance claim (thereby avoiding the pleading requirements of a nonfeasance claim, including the necessity of pleading a special relationship).  At the motion to dismiss stage, we may consider only the allegations made in the complaint.  Rosenthal v. Dean Witter Reynolds, Inc., 908 P.2d 1095, 1099 (Colo. 1995) ("[I]n passing upon a motion to dismiss a complaint, the court can consider only matters stated therein and must not go beyond the confines of the pleading.").  We may not consider the viability of claims that N.M. has not yet asserted.  Accordingly, we must take N.M.'s negligence claim as it has been presented to us, namely, as a nonfeasance claim.

¶49    For all of the foregoing reasons, under either the Conley standard or Warne's "plausibility" standard, we conclude that N.M. has not sufficiently stated a viable negligence claim on which relief could be granted.

¶50    Accordingly, we agree with the division below that the district court properly granted Trujillo's motion to dismiss.

16

### III. Conclusion

¶51    For these reasons, we affirm the judgment of the court of appeals and remand this case for further proceedings consistent with this opinion.

**JUSTICE MÁRQUEZ** does not participate.