The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
November 14, 2024

**2024COA120**

**No. 23CA1663, *Harrington v. Neutron Holdings* — Torts — Negligence — Duty of Care — Electric Scooters**

A division of the court of appeals holds that, without more than the allegations made in this case, a company that rents electric scooters to third parties does not, by that act alone, owe a duty to the public to protect against injuries caused by users of its scooters. The division does not address the circumstances under which such a duty may arise based on other acts or omissions.

Court of Appeals No. 23CA1663
City and County of Denver District Court No. 23CV30663
Honorable Jill D. Dorancy, Judge

Josanna Harrington,

Plaintiff-Appellant,

v.

Neutron Holdings, Inc., d/b/a Limebike and/or Lime,

Defendant-Appellee.

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE SCHOCK
Fox and Johnson, JJ., concur

Announced November 14, 2024

Muhaisen & Muhaisen, LLC, Wadi Muhaisen, Scott C. Hammersley, Denver, Colorado, for Plaintiff-Appellant

Wheeler Trigg O'Donnell LLP, Kevin J. Kuhn, Anne M. Anderson, Denver, Colorado; Hinshaw & Culbertson LLP, Steven R. Bonanno, Chicago, Illinois, for Defendant-Appellee

¶ 1     Electric scooters have permeated cities throughout the United States in recent years, and Denver is no exception.  And with new technologies often come new twists on established legal principles.  This is such a case.  Applying tort common law, we must determine whether the companies that rent out those scooters owe a duty to the public to protect against injuries caused by their customers.

¶ 2     Neutron Holdings, Inc., d/b/a Limebike and/or Lime (Lime), is one such company.  It rents electric scooters to the public by placing them throughout Denver.  After colliding with someone riding a Lime scooter in the wrong direction, Josanna Harrington sued Lime for negligence.  The district court dismissed the claim, concluding that Lime did not owe Harrington a duty to protect her from harm caused by a third party's use of its scooter.

¶ 3     On the facts alleged in this case, we agree with the district court.  In doing so, we do not address the circumstances under which Lime might have such a duty as a result of its own acts or omissions or based on allegations that are not made in this case.  We hold only that a company's rental of electric scooters to third parties does not, in and of itself, give rise to a duty to members of

the general public to protect them from users' unsafe operation of the scooters. We therefore affirm the dismissal of the claim.

## I. Background

¶ 4 According to the allegations in the complaint, Harrington was riding her bicycle one evening in a bike lane in downtown Denver when she was hit and severely injured by an individual riding a Lime scooter in the opposite direction. The person riding the scooter — who Harrington alleges was intoxicated — fled the scene.

¶ 5 Harrington sued Lime for negligence.[1] She alleged that "[b]y placing scooters into the stream of commerce and littering them all over [Denver], [Lime] had a duty to ensure that . . . users operated [the scooters] in a safe manner to protect the public," including Harrington. She further alleged that Lime breached that duty by

- failing to check on the scooters or oversee users, instead "simply drop[ping] [scooters] off throughout the city" and relying on contractors to collect and recharge them;

---

[1] Harrington also sued the unidentified rider of the scooter, named as Jane Doe in the complaint, but that person was never served. *See Rea v. Corrs. Corp. of Am.*, 2012 COA 11, ¶ 13 ("[N]amed but unserved defendants are not litigants for purposes of determining the appealability of an order under the final judgment rule.").

- failing to properly inspect and maintain its scooters;

- failing to take measures to ensure that scooter users are not intoxicated, even though many people in Denver use Lime scooters to "go from bar to bar drinking";

- failing to restrict scooters from being driven the wrong way against traffic, despite their GPS capabilities and other restrictions on where the scooters can be driven;

- failing to provide adequate warnings and operational instructions to scooter users;

- failing to ensure that users know how to properly operate the scooters;

- failing to inform users of relevant rules and regulations;

- failing to ensure that the person who rents the scooter is the one actually operating it; and

- failing to properly regulate the speed of the scooters.

¶ 6    Lime moved to dismiss the complaint for failure to state a claim upon which relief could be granted. It argued that (1) Harrington's claim was barred by the federal Graves Amendment, 49 U.S.C. § 30106, which bars certain claims against the owner of a rented motor vehicle; and (2) Harrington did not

3

allege facts plausibly showing that Lime owed her a duty of care. Harrington argued in response that (1) the Graves Amendment did not apply because she alleged that Lime had engaged in negligent conduct, and (2) Lime owed her (and the public at large) a duty of care based on its own operating procedures and Denver regulations.

¶ 7    The district court granted Lime's motion and dismissed Harrington's claim. It first concluded that the applicability of the Graves Amendment turned on whether Harrington had asserted an actionable negligence claim against Lime. It then concluded that she had not. Characterizing Harrington's claim as one for nonfeasance (failure to act) as opposed to misfeasance (active misconduct), the district court determined that Harrington had not alleged facts giving rise to a special relationship that would impose a duty on Lime to protect her from harm caused by a third party.

## II.    Duty of Care

¶ 8    Harrington contends that the district court erred by concluding that Lime did not owe her a legal duty to protect her from the risk of harm caused by third parties' use of its scooters. We disagree. We hold that, without more than the allegations made

4

by Harrington in this case, Lime's rental of scooters to third parties does not give rise to such a duty on Lime to the public at large.[2]

### A. Standard of Review and Applicable Law

¶ 9 We review de novo a district court's dismissal for failure to state a claim under C.R.C.P. 12(b)(5), applying the same standards as the district court. *N.M. v. Trujillo*, 2017 CO 79, ¶ 18. In doing so, we accept all allegations in the complaint as true and view them in the light most favorable to the plaintiff to determine whether the plaintiff has stated a "plausible claim for relief." *Id.* at ¶¶ 18, 20. Dismissal is proper "only when the facts alleged in the complaint cannot, as a matter of law, support the claim for relief." *Id.* at ¶ 18.

¶ 10 The threshold issue in any negligence action is whether the defendant owed a legal duty to protect the plaintiff against the injury alleged. *HealthONE v. Rodriguez*, 50 P.3d 879, 888 (Colo.

---

[2] Other courts are split on this issue. *Compare Springsteen v. Bird Rides, Inc.*, 666 F. Supp. 3d 1170, 1175 (D. Utah 2023) (holding there is no duty), *and Woodhouse v. Bird Rides, Inc.*, No. SA-20-CV-01113-XR, 2021 WL 1986427, at *4-7 (W.D. Tex. May 17, 2021) (unpublished order) (same), *and Robinson v. Bird Rides, Inc.*, No. 1:19-CV-05295, 2020 WL 2129241, at *2 (N.D. Ga. May 5, 2020) (unpublished opinion) (same), *with Hacala v. Bird Rides, Inc.*, 306 Cal. Rptr. 3d 900, 914-19 (Ct. App. 2023) (recognizing a duty under state statute requiring ordinary care in managing one's property).

2002).  Absent such a duty, a negligence claim must fail.  *Univ. of Denver v. Doe*, 2024 CO 27, ¶ 88; *see also Univ. of Denver v. Whitlock*, 744 P.2d 54, 56 (Colo. 1987) ("A negligence claim must fail if based on circumstances for which the law imposes no duty of care upon the defendant for the benefit of the plaintiff.").

¶ 11    In determining whether a duty exists, Colorado courts distinguish between "claims based on a defendant's failure to act (i.e., nonfeasance) and claims based on a defendant's active misconduct (i.e., misfeasance)."  *Trujillo*, ¶ 25.  The recognition of a duty is "more circumscribed" for claims involving nonfeasance than for those involving misfeasance because a nonfeasant "merely fails to benefit the injured party by interfering in his or her affairs" rather than actively "creating a risk of harm."  *Smit v. Anderson*, 72 P.3d 369, 372 (Colo. App. 2002); *see also Whitlock*, 744 P.2d at 57 ("[T]he fact that the [defendant] is charged with negligent failure to act rather than negligent affirmative action is a critical factor that strongly militates against imposition of a duty . . . .").

¶ 12    Whether a defendant owes a legal duty to the plaintiff and the scope of that duty are questions of law that we review de novo.

*Trujillo*, ¶ 24; *Mid-Century Ins. Co. v. HIVE Constr., Inc.*, 2023 COA 25, ¶ 27 (*cert. granted in part on other grounds* Feb. 5, 2024).

### B.    Nonfeasance

¶ 13    We agree with the district court that Harrington's claim is primarily one for nonfeasance.  With one exception that we discuss below — making scooters available for public use — Harrington's claim is based entirely on what Lime allegedly did *not* do to protect her from harm.  *See Rocky Mountain Planned Parenthood, Inc. v. Wagner*, 2020 CO 51, ¶ 46 ("Allegations as to what a defendant did not do are indisputably allegations of nonfeasance.").

¶ 14    Indeed, every one of the ways in which Harrington alleges that Lime breached its duty of care involves action Lime allegedly did not take: (1) not overseeing users; (2) not properly maintaining or inspecting the scooters; (3) not ensuring users are not intoxicated; (4) not restricting scooters from being driven the wrong way; (5) not providing adequate warnings and instructions; (6) not ensuring users know how to operate the scooters; (7) not informing users of rules and regulations; (8) not checking if the renter of the scooter is the operator; and (9) not properly regulating the scooter's speed.

¶ 15    For claims involving nonfeasance, a duty to act exists only when there is a special relationship between the parties "of such a character that social policy justifies the imposition" of such a duty. *Id.* at ¶ 43 (citation omitted).  Colorado law recognizes only six such relationships: (1) common carrier/passenger; (2) innkeeper/guest; (3) possessor of land/invited entrant; (4) employer/employee; (5) parent/child; and (6) hospital/patient.  *Trujillo*, ¶ 26.  Absent a special relationship between the defendant and the plaintiff or the wrongdoer, the law imposes no duty to prevent a third party from harming another.  *Leake v. Cain*, 720 P.2d 152, 160 (Colo. 1986).

¶ 16    Harrington does not contend that any of the six previously recognized "special relationships" exists in this case.  Instead, she urges us to recognize a new category of special relationship where the defendant "create[s] a peril or change[s] the nature of an already existing risk."  *Id.* at 161.  But this is simply another way of saying her claim is for misfeasance.  *See Blakesley v. BNSF Ry. Co.*, 2019 COA 119, ¶ 15 (treating allegation that defendant created a new risk of harm as misfeasance); *Hamon Contractors, Inc. v. Carter & Burgess, Inc.*, 229 P.3d 282, 296 (Colo. App. 2009) ("[A]n actor is guilty of misfeasance when it acts affirmatively to create or increase

a risk to another."). To the extent Harrington argues that Lime's duty arose from its own acts, we address that argument below.

¶ 17    To the extent she asserts that these circumstances create a special relationship between Lime and the general public that can support a claim for *failing* to act to protect her from harm caused by third parties, we decline to recognize this as a "new type of special relationship." *Trujillo*, ¶ 35. One hallmark of a special relationship for purposes of a nonfeasance claim is "a relationship of dependence or mutual dependence" between the parties. *Id.* at ¶¶ 26, 35. Moreover, "[c]entral to there being a special relation between [the] actor and *wrongdoer* is a determination that the actor has the right and capacity to control the wrongdoer." *Lego v. Schmidt*, 805 P.2d 1119, 1122 (Colo. App. 1990) (emphasis added).

¶ 18    Harrington does not allege any facts that would establish "a relationship of dependence or mutual dependence" between herself and Lime. *Trujillo*, ¶ 35. She does not, for example, allege that she had "any reason to depend upon" Lime for her protection. *Whitlock*, 744 P.2d at 60-61; *see also Springsteen v. Bird Rides, Inc.*, 666 F. Supp. 3d 1170, 1175 (D. Utah 2023) (holding that electric scooter rental company did not owe plaintiff a duty to protect her from

9

injury caused by its scooter where plaintiff did not allege that company "assume[d] responsibility for [her] safety" or "deprived her of 'her normal opportunities for self-protection'") (citation omitted). Indeed, Harrington does not allege that she has ever interacted with Lime at all. Harrington's suggestion that action by Lime was "necessary for [her] aid or protection does not of itself impose upon [Lime] a duty to take such action." *Whitlock*, 744 P.2d at 58 (quoting Restatement (Second) of Torts § 314 (Am. L. Inst. 1965)).

¶ 19    Nor has Harrington plausibly alleged that Lime had the "right and capacity to control" the user who collided with her. *Lego*, 805 P.2d at 1122; *see also Springsteen*, 666 F. Supp. 3d at 1175-76 (holding that electric scooter company had no duty to control conduct of its customer where it was not present at the time of the conduct, had no ability to control the customer, and did not know of the necessity and opportunity for exercising such control); *Robinson v. Bird Rides, Inc.*, No. 1:19-CV-05295, 2020 WL 2129241, at *2 (N.D. Ga. May 5, 2020) (unpublished opinion) (holding that electric scooter company had no legal control over customer).

¶ 20    The most that Harrington alleges in this respect is that Lime scooters have "GPS capabilities" and are restricted from being

driven in "certain areas." These allegations do not establish any ability on the part of Lime to control its users' conduct beyond those limited restrictions — including, as the complaint suggests, by preventing the scooters from "being driven the wrong way into traffic." Regardless, such ancillary restrictions fall well short of the degree of control associated with the categories of special relationships previously recognized by Colorado courts. *See Davenport v. Cmty. Corrs. of Pikes Peak Region, Inc.*, 962 P.2d 963, 968 (Colo. 1998) ("Whether a special relationship exists . . . depends, in large part, upon the level of control exercised by [the defendant] over [the wrongdoer]."); *Perreira v. State*, 768 P.2d 1198, 1211 n.9 (Colo. 1989) (listing four special relationships that give rise to a duty to control conduct of another); Restatement (Second) of Torts § 315 & cmt. c. (distinguishing between special relationships between actor and *wrongdoer* that impose a duty to control wrongdoer's conduct and special relationships between actor and *victim* that give victim a right to protection).

¶ 21     Harrington relies on *Halliburton v. Public Service Co. of Colorado*, 804 P.2d 213, 216 (Colo. App. 1990), for the proposition that a duty exists when the defendant's product is a "substantial

factor" in causing the harm.  In *Halliburton,* the court concluded that a natural gas supplier that had serviced appliances in the plaintiffs' home had a duty to inspect and repair a component of the gas piping that it had reason to know its gas had caused to deteriorate.  *Id.*  In reaching that conclusion, the court held that "[w]hen a party can reasonably foresee that its product will be used as an integral component of a defective and unreasonably dangerous product, there is a duty upon that party to undertake corrective action to alleviate, if possible, the hazard."  *Id.*

¶ 22    *Halliburton* does not support the imposition of a duty here for four reasons.  First, as the division noted, the inherently hazardous nature of natural gas creates a heightened duty of care for manufacturers and distributors of natural gas.  *Id.* at 215-16.  Second, *Halliburton* involved a claim by the defendant's *customers* who, by virtue of that relationship, had a "legitimate expectation" that the defendant would take reasonable efforts to prevent the product from causing them harm.  *Id.* at 216.  In contrast, Lime

and Harrington are strangers to one another.[3]  Third, a primary basis for the duty in *Halliburton* was the "service component of [the] defendant's business": The defendant had twice been to the plaintiffs' home, knew of a specific substantial hazard, and could have prevented the harm with a "relatively insignificant amount of time and expense."  *Id.*  No similar facts exist in this case.

¶ 23  Fourth, and most importantly, Harrington does not allege that Lime's scooters are "defective [or] unreasonably dangerous."  *Id.* Instead, her claim is based entirely on how a third party used the scooter.  Whatever the extent of a company's duty to prevent harm caused by a problem with *its product*, it has no duty to prevent harm caused by a *third party*, absent a special relationship between the parties or other special circumstances not present here.  *See Leake*, 720 P.2d at 160; *Davenport*, 962 P.2d at 967.

¶ 24  Thus, because Harrington failed to allege any special relationship that would impose a duty on Lime to take affirmative

---

[3] Harrington insinuates that the individual who was riding the scooter at the time of the accident may not have been the one who rented the scooter.  If true, that would make Lime's relationship with its customer even one step further removed from Harrington.

action to protect her from harm, the district court correctly dismissed her claim to the extent it was based on nonfeasance.

## C.  Misfeasance

¶ 25    The only affirmative act by Lime that Harrington alleges in the complaint is that Lime "deploys electronic scooters into the public." Elsewhere in the complaint, she describes this act with more colorful language, alleging that Lime "place[s] scooters into the stream of commerce and litter[s] them all over [Denver]." But the act in these two allegations is the same: Lime provides scooters for public use. To the extent this constitutes a claim of misfeasance, we conclude that it too is insufficient to create a legal duty on the part of Lime toward Harrington as a member of the general public.

¶ 26    In determining whether to recognize a duty in a misfeasance case, we consider (1) the risk involved; (2) the foreseeability and likelihood of injury as weighed against the social utility of the actor's conduct; (3) the magnitude of the burden of guarding against the harm; and (4) the consequences of placing the burden on the actor. *Smit*, 72 P.3d at 373. These factors are not exclusive, and no factor is controlling. *Id.* The question ultimately comes

14

down to "fairness under contemporary standards" and "policy considerations" as to whether a plaintiff is entitled to protection. *Id.*

¶ 27 Considering these factors, we conclude that the mere act of making electric scooters available for public use, without more, does not impose a duty on the part of the rental company to the general public to ensure that users safely operate the scooters.

¶ 28 Although an accident like the one alleged in this case presents a significant risk of serious bodily injury, Harrington does not allege that Lime had any reason to know that the user who hit her was intoxicated or otherwise likely to operate the scooter unsafely. *Cf. Casebolt v. Cowan*, 829 P.2d 352, 361 (Colo. 1992) (holding that owner of borrowed vehicle owed duty to borrower if owner knew borrower was "likely to use the vehicle in a manner involving unreasonable risk of physical harm to himself or others"). The general foreseeability that *someone* might use the scooter while intoxicated or otherwise in violation of traffic laws cannot alone justify imposing a duty upon Lime to prevent all such improper use.

¶ 29 Moreover, for us to recognize such a duty based on the allegations in this case would effectively require Lime to continuously monitor and control the conduct of every one of its

users.  Harrington suggests various possible steps Lime might be able to take, including preventing its scooters from driving against traffic or disabling its scooters after an abrupt stop.  The complaint makes no allegation as to the feasibility of such measures, the latter of which would do nothing to *prevent* an accident.  But even if such measures were both feasible and effective, imposing a generalized duty on Lime to ensure that its users operate the scooters safely would have the practical effect of making Lime liable for the negligence of its renters.  *Cf. Ochoa v. Vered*, 212 P.3d 963, 966 (Colo. App. 2009) ("Vicarious liability depends on the right to direct or control the actions of another.").  The magnitude and consequences of such a burden weigh against recognizing a duty.

¶ 30    Indeed, Harrington concedes that mere participation in the electric scooter market cannot alone give rise to a duty.  But she argues that, by making its scooters accessible, Lime increased the risk to the public.  *See Laughman v. Girtakovskis*, 2015 COA 143, ¶ 11 ("Generally, every individual owes a duty of ordinary care not to create an unreasonable risk of harm to others."); Restatement (Second) of Torts § 321 (providing that an actor who "create[s] an

unreasonable risk of causing physical harm to another" has "a duty to exercise reasonable care to prevent the risk from taking effect").

¶ 31 Even if that were true, however, Harrington makes no allegation in the complaint that Lime's scooters are inherently dangerous or create an *unreasonable* risk to the public. *See Halliburton*, 804 P.2d at 216; *cf. Kern v. Gen. Motors Corp.*, 724 P.2d 1365, 1367 (Colo. App. 1986) ("[T]he fact that under certain circumstances an accident may occur in connection with the use of a product does not necessarily make the product defective and unreasonably dangerous."). And the General Assembly's regulation, and express authorization, of the operation of electric scooters points in the other direction. *See* § 42-4-1412(1), C.R.S. 2024 (providing that a rider of an electric scooter has "all of the rights and duties applicable to the driver of any other vehicle").

¶ 32 Nor does Harrington allege in the complaint many of the other circumstances she alludes to on appeal as potential sources of a duty. *See Trujillo*, ¶ 48 ("At the motion to dismiss stage, we may consider only the allegations made in the complaint."). She does not allege that the accident was caused by a defect or malfunction in the scooter related to Lime's improper maintenance. She also

17

does not allege that Lime violated its own safety standards or procedures in renting the scooter in this case.[4]  Instead, her complaint makes clear that her claim is premised on Lime's purported duty to ensure that *users* operate the scooters safely.

¶ 33     We reject Harrington's extensive reliance on *Blakesley* for many of the reasons we have already addressed.  In *Blakesley*, the division held that the defendant owed a contractor a duty of care in providing jobsite safety instructions where the defendant's employee affirmatively instructed the contractor in violation of the company's own rules.  *Blakesley*, ¶ 2.  Many of the factors supporting the imposition of a duty in *Blakesley* are lacking in this case: (1) there was no relationship between Lime and Harrington; (2) Harrington does not allege in the complaint that Lime violated its own company rules; (3) Lime did not affirmatively permit the conduct in question; and (4) the burden of requiring Lime to continuously monitor and

---

[4] In her response to Lime's motion to dismiss, Harrington asserted that Lime violated its "operational protocols" and local law by failing to enforce certain requirements listed on Lime's website.  But the complaint made no mention of any such protocols or regulations. Because our review is limited to the allegations in the complaint, we may not consider allegations made for the first time in response to the motion to dismiss.  *See N.M. v. Trujillo*, 2017 CO 79, ¶ 48.

control its users' independent conduct far exceeds the *Blakesley* defendant's burden of "declin[ing] to authorize a departure from . . . jobsite safety standards" or simply "declin[ing] to answer the question" concerning such a departure. *Id.* at ¶ 29.

¶ 34 Importantly, our conclusion that Lime did not owe a duty to Harrington is limited to the allegations in the complaint: that Harrington was injured by someone riding a Lime scooter in the wrong direction and that Lime's sole act was making its scooters available for rent. There may be other circumstances in which an electric scooter rental company might have such a duty — for example, if the company is alleged to have engaged in a specific act of misfeasance beyond merely renting the scooters or if the company has reason to know that a particular user is likely to harm others. *See Casebolt*, 829 P.2d at 361. We express no opinion on the existence and scope of a company's duty to third parties in circumstances not alleged in this case. Nor do we consider the nature of any duty Lime might owe to the *users* of its scooters.

¶ 35 We hold only that a rental company's act of making its scooters available to the public does not, without more, create a duty on the part of the company to protect third parties from its

users' operation of the scooters. Because Harrington failed to allege any additional facts sufficient to show that Lime owed her a legal duty of care, the district court correctly dismissed her claim.[5]

## III. Disposition

¶ 36 The judgment is affirmed.

JUDGE FOX and JUDGE JOHNSON concur.

---

[5] Because we conclude that Harrington failed to state a negligence claim under state law, we need not address Lime's argument that such a claim would be barred by the Graves Amendment, 49 U.S.C. § 30106(a)(2), including its suggestion that there might be certain classes of negligence claims that do not qualify as "negligence . . . on the part of the owner" for purposes of that statute.